In the Matter of GROSS–FEIBEL
COMPANY, INC., Debtor.

**Bankruptcy No. 1–80–02730.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

July 15, 1982.

Mark A. Greenberger, Cincinnati, Ohio,
for trustee.

H. Grant Stephenson, Columbus, Ohio, for
creditor.

## DECISION ON TRUSTEE'S APPLICA-
## TION FOR INSTRUCTIONS

BURTON PERLMAN, Bankruptcy
Judge.

The trustee in the above captioned Chapter 7 case has filed an Application for Instructions that requests a determination of the proper disposition of certain funds that are currently in his possession. Subsequent to that filing, Marine-Midland Bank, N.A. ("the Bank"), a secured creditor of the estate, filed a memorandum asserting that the funds were included in its collateral. A hearing was held on the application, at the conclusion of which we reserved decision. Since that time, the trustee and the Bank have filed memoranda in support of their respective positions.

The relevant facts are as follows. Two security agreements executed by the Bank and the debtor on July 5, 1979 and financing statements filed in accordance therewith evidence a perfected security interest in favor of the Bank, the validity of which is not disputed. The collateral listed in the relevant security agreement is "Equipment; Fixtures; Inventory; Accounts; Chattel Paper; Documents; Instruments; and General Intangibles," the agreement expressly extending to proceeds thereof as well as after-acquired collateral. Sometime after the filing of the petition in bankruptcy on

December 2, 1980,[1] the trustee received a check in the amount of $2553.06, representing a refund for excess state unemployment taxes. He also subsequent to the filing received a check for a refund of unearned insurance premiums in the amount of $2500.00.

The issue before us is whether these two checks are subject to the security interest of the Bank. We hold that the Bank has failed to prove that they are, and the trustee is instructed to retain the funds for the benefit of general creditors.

■■■ We have reached this conclusion by applying 11 U.S.C. § 552 which provides:

"(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

Subsection (a) thus states that liens created by pre-petition security agreements do not extend to property acquired by the estate after the filing of a petition under title 11.[2] We pay attention to § 552(b) because the correct analysis of the checks here involved is that they are not themselves the property in question, but are proceeds of that property,[3] and it will be recalled that the Bank's security agreement extends to proceeds. Subsection 552(b) limits the general rule set forth in § 552(a) by validating security interests in proceeds of secured property acquired before the filing of a petition. Simply stated, "[p]roceeds coverage, but not after acquired property clauses, are valid under title 11." 124 Cong. Rec. H11, 097–98 (Sept. 28, 1978) (remarks of Rep. Edwards); S17,414 (Oct. 6, 1978) (remarks of Sen. De-Concini). It must be emphasized that the exception to subsection (a) set forth in subsection (b) refers to proceeds of "property of the debtor acquired before the commencement of the case..." Therefore, proceeds of collateral may be held to be secured by a pre-petition security interest only if the collateral which produces the proceeds was "acquired" by the debtor prior to the commencement of the case. *See 4 Collier on Bankruptcy,* ¶ 552.02, at p. 552–5 (15th Ed. 1981).

In applying § 552 to the present situation, the first question which must be confronted is what "property" we are concerned with. It is not the checks themselves in the hands of the trustee which are the relevant property: that is only a money equivalent and has nothing to do with the source of the money. Clearly the "property" is the right to receive those checks, a kind of property known in the law as a chose in action or a thing in action. Because New York law classifies this kind of property as a general intangible, it cannot be denied that the rights to the refunds are

1. The petition was filed December 2, 1980 for involuntary Chapter 7 relief. On February 20, 1981, the case was converted to Chapter 11, and on October 1, 1981, the debtor converted the case back to Chapter 7.

2. A title 11 case is commenced by the filing of a petition under the appropriate chapter. 11 U.S.C. §§ 301–303.

3. Because the Code does not define "proceeds" we look to state law for guidance. Section 9–306(1) of the N.Y.U.C.C. provides in part:

"'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds."

within the Bank's list of collateral.[4] *See also: Segal v. Rochelle*, 336 F.2d 298 (5th Cir. 1964) Affirmed, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). But this is not enough to compel a conclusion favorable to the Bank.

For the Bank to succeed by reason of 11 U.S.C. 552 it must be shown that the debtor "acquired" the "property" prior to the filing of the petition. Very specifically, it must appear that debtor had a right to the refunds prior to the filing of the petition. This record, however, is entirely silent as to the time when that right as to either refund arose, whether prior to or subsequent to the bankruptcy filing on December 2, 1980.

 The resolution of the instant controversy then must turn on which party carries the burden of proof regarding the right to the checks. While the dispute was formally initiated in this court by the trustee's filing of Application for Instructions, what is involved here is, in effect, a reclamation proceeding because the Bank seeks to have alleged collateral turned over to it. The Bank therefore must be regarded as occupying the same position as does the plaintiff in an adversary proceeding. We hold therefore that the burden of proving its right of possession by offering evidence regarding the timing of the acquisition of rights to the refunds rests with the Bank. *Accord: In re Four Star Music Co., Inc.*, 2 B.R. 454, 460 (Bkrtcy.M.D.Tenn., 1979). The absence of evidence on this score is fatal to its claim to the refunds.

The foregoing constitutes our findings of fact and conclusions of law. The trustee shall retain the funds for the benefit of general creditors.

---

4. The parties have agreed that the law of New York, the state in which the security agreement was executed, governs the interpretation of the agreement. Section 9–106 of the New York Commercial Code defines "general intangibles" as:

"any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money."