RONEY, Circuit Judge:
 

 In this case, Louisiana State School Lunch Employees Retirement System (Louisiana) sued Irving Trust Company for conversion of bonds worth $291,000. The central question is whether the bonds had been “delivered” to Louisiana so that the subsequent sale by Irving Trust for its own security interest amounted to a conversion of Louisiana’s bonds. Concluding that delivery had occurred within the meaning of § 8-313(l)(c) of the New York version of the Uniform Commercial Code, the statute both parties agree is controlling, we reverse the grant of summary judgment for Irving Trust and direct the district court to enter judgment for Louisiana.
 

 The facts are not in dispute. Irving Trust acted as a clearing house for Legel, Braswell Government Securities, Inc., a dealer in government securities. Irving Trust not only processed securities transactions for Legel, Braswell and kept physical possession of Legel, Braswell’s securities, but also provided financing when Legel, Braswell’s account was insufficient to cover the transactions. Legel, Braswell’s inventory of securities served as collateral for the loans.
 

 Sometime prior to October 1978, Legel, Braswell sold Thomson McKinnon Securities, Inc. $1,191,000 worth of 9.125% United States Government Guarantee Maritime Puget Sound Barge and Tug Bonds, evidenced by Certificates 90 and 92, worth $900,000 and $291,000, respectively. The sale, handled by Irving Trust, was really a collateralized loan, whereby Legel, Braswell agreed to buy back the bonds for the sale price plus interest.
 

 Just before Legel, Braswell was due to repurchase the bonds, it agreed to sell $291,000 worth of Puget Sound bonds to Louisiana. On October 18, 1978 Legel, Braswell sent a confirmation of purchase to Louisiana. Although the confirmation did not refer specifically to Certificate 92, the description fit only that particular certificate.
 

 Pursuant to Legel, Braswell’s instructions, Irving Trust on November 2, 1978 received Certificates 90 and 92 from Thomson McKinnon and paid that company, debiting Legel, Braswell’s account for the amount paid. On January 10, 1979, two days after Legel, Braswell filed for bankruptcy, Legel, Braswell instructed Irving
 
 *514
 
 Trust to send Certificate 92 to Louisiana. That same day, an employee of Irving Trust placed the Certificate in an envelope, attached a registered mail receipt bearing Louisiana’s address and took the envelope to the mail room. Since he was unaware of Louisiana’s zip code, he contacted Legel, Braswell which then instructed him not to send the Certificate.
 

 Having never been paid by Legel, Bras-well the amount it advanced for the bonds, Irving Trust eventually sold the Certificate to satisfy its security interest and retained the proceeds from the sale, pursuant to an order of the bankruptcy judge presiding in Legel, Braswell’s bankruptcy proceeding. Louisiana filed its complaint in that proceeding. The district court held that Legel, Braswell had not “delivered” Certificate 92 to Louisiana so that any interest Louisiana acquired in the bonds was subject to the security interest of Irving Trust.
 

 The only question is whether the bonds were “delivered” to Louisiana. Irving Trust does not dispute that if delivery occurred, Louisiana was a bona fide purchaser with superior rights in the bonds.
 
 See
 
 N.Y. U.C.C. § 8-301(2) (McKinney 1964) (a bona fide purchaser of a security acquires his interest free of any adverse claim);
 
 id
 
 § 9-309 (a bona fide purchaser of a security takes priority over an earlier perfected security interest). Both parties agree that New York law controls and that the governing statute is § 8-313(l)(c) of the Uniform Commercial Code.
 

 Under that provision of the Code, (1) Delivery to a purchaser occurs when
 

 (c) his broker sends him confirmation of the purchase and also by book entry or otherwise identifies a specific security in the broker’s possession as belonging to the purchaser.
 

 A security may be delivered without the purchaser’s taking physical possession.
 
 See id
 
 § 8-313(l)(c) Official Comment 1 (“[DJelivery may be completed while the security is still in the hands of the broker.”). Thus it is irrelevant that Louisiana never took physical possession of Certificate 92.
 

 Irving Trust does not dispute that Louisiana was a purchaser or that Legel, Braswell was a broker. Nor is there any doubt that Legel, Braswell sent a confirmation of the purchase to Louisiana. The decision here, therefore, turns on two questions: first, whether Legel, Braswell specifically identified Certificate 92 as belonging to Louisiana and second, if so, whether the bonds were in Legel, Braswell’s possession at that time.
 

 The bonds may have been identified as belonging to Louisiana as early as November 2,1978. By that time, Legel, Braswell’s books reflected the sale, Louisiana had paid for the bonds, and the bonds had been received by Irving Trust for Legel, Braswell’s account. Although Legel, Braswell’s book entry did not refer to Certificate 92 as evidencing the securities sold, it explicitly described the bonds in every detail except the certificate number. Unquestionably the sale to Louisiana was of Certificate 92. The only other Puget Sound bonds in Legel, Braswell’s account with Irving Trust, covered by Certificate 90, were sold to another customer.
 

 In any event, the bonds evidenced by Certificate 92 were identified as Louisiana’s property on January 10 when Irving Trust, acting pursuant to Legel, Braswell’s instructions, placed Certificate 92 in an envelope addressed to Louisiana. This action, taken by Irving Trust as Legel, Braswell’s agent, established beyond doubt that the bonds for which Louisiana had paid and received a confirmation of sale were those evidenced by Certificate 92. Section 8-313(l)(c) provides for identification by book entry “or otherwise.”
 
 See Matthysse
 
 v.
 
 Securities Processing Services, Inc.,
 
 444 F.Supp. 1009, 1018 (S.D.N.Y.1977) (specific securities identified as purchaser’s property under § 8-313(l)(c) when broker’s agent received sale confirmation and delivery ticket, physically allocated certificates corresponding to the securities, and placed certificate numbers and purchaser’s name on delivery form attached to certificates).
 

 
 *515
 
 The requirement that the security be “in the broker’s possession” is met here also. Just as it is unnecessary for the purchaser to acquire physical possession of a security to obtain delivery, it is unnecessary for a broker to have physical possession to make delivery. At the time the bonds were identified as belonging to Louisiana, they were in the possession of Irving Trust, Le-gel, Braswell’s clearing agent. Possession by a clearing agent for the broker’s account is sufficient under § 8-313(l)(c), as concluded in a carefully reasoned opinion by District Judge Gagliardi of the Southern District of New York,
 
 Matthysse v. Securities Processing Services, Inc.,
 
 444 F.Supp. at 1018-20.
 
 See also Le Marchant v. Moore,
 
 150 N.Y. 209, 215-16, 44 N.E. 770, 772 (1896) (title to a security may pass from broker to customer even though broker’s agent maintains physical possession of the security).
 

 The facts in
 
 Matthysse
 
 were virtually identical to those here. After receiving payment from its customer, the broker instructed his clearing agent to transmit to the customer securities held by the agent for the broker. Prior to transmission, however, the broker filed for voluntary dissolution, instructing the agent to disregard any unexecuted delivery instructions. To cover loans made to the broker, the agent liquidated the securities and retained the proceeds. Reasoning that the securities had been delivered to the customer within the meaning of § 8-313(l)(c), the court held that liquidation of the securities amounted to a conversion of the customer’s property. In concluding that physical possession by the clearing house constituted “effective possession” by the broker under § 8-313(l)(c), the court emphasized the agency relationship between the two. The clearing house “held the bonds on behalf of [the broker] as its clearing agent and subject to its directions.”
 
 Matthysse v. Securities Processing Services, Inc.,
 
 444 F.Supp. at 1018. Similarly, Irving Trust held the bonds for Legel, Braswell at its instructions. Possession by Irving Trust amounted to possession by Legel, Braswell.
 

 Irving Trust relies on the Third Circuit case of
 
 In re Paragon Securities Co.,
 
 599 F.2d 551 (3rd Cir.1979). The
 
 Paragon
 
 court held that physical possession by a clearing agent of the bonds in that case did not constitute possession by the broker under § 60(e)(4) of the old Bankruptcy Act, 11 U.S.C.A. § 96(e)(4) (1976) (repealed). In the first place, the
 
 Paragon
 
 court noted that the test for possession by the broker under the Bankruptcy Act is stricter than under the Uniform Commercial Code. “We are unconvinced that ‘in the stockbroker’s possession' under section 8-313(l)(c) should necessarily be defined the same way for the purposes of construing section 60e.”
 
 In re Paragon Securities Co.,
 
 599 F.2d at 556-57. In the second place, the bonds were part of a bulk acquisition by the broker who never allocated or physically set aside the bonds for the purchaser.
 
 Id.
 
 It is beyond dispute in this ease that Certificate 92 was the precise certificate intended for Louisiana.
 

 Irving Trust raises a number of points that need not detain us long. First, it argues that Legel, Braswell could not transfer title to the bonds because when the broker agreed to the sale and mailed Louisiana the confirmation of sale, it did not own the securities, having not yet reacquired them from Thomson McKinnon. By January 10, the date of delivery, however, Legel, Braswell had repurchased the bonds. Title could pass at that time.
 

 Noting that Legel, Braswell filed for bankruptcy on January 8, Irving Trust also contends that the broker lacked legal authority to transfer any of its property. While the trustee in bankruptcy may be able to turn aside the transfer as a voidable preference, 11 U.S.C.A. § 547, he apparently has not sought to do so and Irving Trust cannot assert this right which is personal to the trustee. 3 Pt. 2 J. Moore & L. King,
 
 Collier on Bankruptcy,
 
 ¶ 60.57[2] (14th ed. 1977).
 

 Finally, Irving Trust asserts that even if Legel, Braswell could transfer title on January 10, it rescinded the delivery instructions before the bonds were physically transferred to Louisiana. Since delivery
 
 *516
 
 under § 8-313(l)(c) is not dependent on the purchaser’s taking physical possession, however, the attempted cancellation was ineffective. Delivery occurred no later than when Irving Trust, acting as Legel, Bras-well’s agent, placed Certificate 92 in the envelope addressed to Louisiana. The subsequent effort by Legel, Braswell and Irving Trust to deny Louisiana possession of the bonds amounted to a conversion of Louisiana’s property.
 
 Cf.
 
 N.Y.U.C.C. § 8-313(l)(c) (McKinney 1964) Official Comment 1 (“When the factual situation[] described in subsection[ ] (1) ... (c) ... occur^] delivery to the purchaser is complete, and no intervening notice of adverse claims before he takes actual physical possession of the security can divest him of his rights.”).
 

 REVERSED.