In re INTEGRATED TESTING PRODUCTS CORPORATION, Debtor.

MELLON BANK (EAST), N.A., Plaintiff,

v.

Ronald L. GLICK, Trustee, Defendant.

Civ. A. No. 86–4458.
Bankruptcy No. 83–06104.
Adv. No. 86–0161TG.

United States District Court,
D. New Jersey.

Feb. 10, 1987.

Andrew O. Schiff and Walter Weir, Jr., Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Cherry Hill, N.J., for Mellon Bank (East) N.A.

## OPINION

COWEN, District Judge.

The sole issue on this bankruptcy appeal is whether the bankruptcy court erred as a matter of law in holding that the appellant had no perfected security interest in funds recovered by the trustee through preference actions. Because I find that as a matter of law no one but the trustee may retain such funds, I find that the court below did not err in awarding summary judgment in favor of the appellee and will affirm.

### I.

The debtor in this case, Integrated Testing Products Corp., entered into a loan agreement with appellant Mellon Bank (formerly Girard Bank) on September 22, 1982, wherein debtor received $600,000.00 in return for a note of the same amount. As security for the loan, the debtor granted to the appellant a security interest in all of the debtor's then existing or thereafter acquired accounts, contract rights, inventory, and general intangibles, as well as any proceeds derived from those sources. Appellant perfected its security interest by filing a UCC-1.

On October 24, 1983, the debtor filed a voluntary petition for reorganization under Chapter 11, which proceeding was subsequently converted to one for liquidation under Chapter 7. In the Chapter 7 proceeding, the trustee successfully filed several preference actions against certain creditors of the debtor and was able to recover in excess of $50,000.00. The appellant claims the debtor still owes $146,-779.49 on the debt.

The appellant filed a complaint on April 10, 1986 and sought to obtain the amounts recovered by the trustee in the preference actions, claiming that the amounts recovered were proceeds or general intangibles, and thus subject to the security agreement. The trustee filed a motion for summary judgment, which the Bankruptcy Court, Hon. William H. Gindin sitting below, granted on the grounds that the debtor never had possession of or an interest in the preferences—the trustee did—and therefore the appellant could not have had a security interest in something the debtor did not have.

The appellant has appealed the adverse judgment to this Court.

## II.

Both parties assumed, for purposes of the summary judgment motion granted by the court below, that the funds paid over to creditors, which were later recovered as preferences, were cash proceeds of the sale of collateral in which the appellant had a security interest. The question remains, however, whether the security interest extends to those funds recovered by the trustee. Initially, both parties look to the language of section 552 of the Bankruptcy Code, which deals with the status of a security interest following a filing in bankruptcy. Subsection (b) of section 552 states:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b). Clearly under section 552(b), we must look to the applicable nonbankruptcy law and the security agreement in determining whether the preferences can be considered proceeds and consequently whether they are subject to the appellant's security interest.

The appellant argues that it has a security interest in the recovered preferences, since these are considered general intangibles under the terms of the security agreement.[1] According to the appellant, under relevant state law provisions, what the debtor received in exchange for those payments must be considered proceeds.

The applicable state law concerning the definition of proceeds in the context of an insolvency proceeding is N.J.S.A. 12A:9–306(4)(a) which states:

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest *only* in the following proceeds:

(a) In identifiable noncash proceeds and in separate deposit accounts containing only proceeds;

*Id.* (emphasis added). Proceeds, according to N.J.S.A. 12A:9–306(1):

[I]ncludes whatever is received upon the sale, exchange, collection of other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security

---

**1.** Paragraph 3 of the security agreement between appellant and the debtor granted to the appellant a security interest in the following: (a) all accounts, contract rights, inventory and general intangibles owned by [the debtor] at the date of this agreement; (b) all accounts, contract rights, inventory, and general intangibles at any time hereafter acquired by [the debtor]; (c) all proceeds of such accounts, contract rights, inventory and general intangibles; (d) all products of such inventory.

agreement. Money, checks, deposit accounts, and the like are "cash proceeds". All other proceeds are "noncash proceeds".

Specifically, the appellant avers that the amounts paid to the other creditors were proceeds in which it has a perfected security interest because the debtor received an intangible in exchange: a right to recover these amounts as a preference if it were to file for bankruptcy.

Appellant is certainly correct in asserting that an intangible, which includes a chose in action, see N.J.S.A. 12A:9–106, can serve as collateral for a debt. See e.g., Trust Co. of Columbus v. United States, 735 F.2d 447, 449 (11th Cir.1984); In re Sunberg, 729 F.2d 561, 562 (8th Cir.1984); Metropolitan Life Ins. Co. v. Poliakoff, 123 N.J.Eq. 524, 198 A. 852 (Ch.1938) (chose in action generally assignable). Under most circumstances, even if the debtor is involved in an insolvency proceeding, a secured party's security interest in the intangible will survive. See N.J.S.A. 12A:9–306(4)(a). I disagree, however, with appellant's argument that the right to institute a preference action is assignable, and thus is subject to a security interest.

■ It is well settled that generally it is the trustee alone, acting on behalf of all the creditors, that has a right to recover payments made as preferences.[2] Louisi-ana State School Lunch Employees Retirement System v. Legel, Braswell Govt. Securities Corp., 699 F.2d 512, 515 (11th Cir.1983); 3 Pt. 2 Collier on Bankruptcy P. 60.57[2], at 1094 (J. Moore & L King eds. 14th ed. 1977). And this right cannot be assigned. See e.g., Texas Consumer Finance Corp. v. First Nat. City Bank, 365 F.Supp. 427, 430 (S.D.N.Y.1973); 3 Pt. 2 Collier on Bankruptcy P. 60.57[2], at 1095; 2 Cowans Bankruptcy Law and Practice § 475, at 65. Moreover, my research has revealed no case supporting the appellant's position[3] and at least one recent decision which indirectly goes against the appellant.

■ In In re First Capital Mortg. Loan Corp., 60 B.R. 915 (Bankr.D.Utah 1986), funds paid by a debtor to another entity were contrary to the terms of an escrow agreement between the creditor and the debtor and the creditor asked the court to find that the preferences recovered by the trustee were subject to a constructive trust.[4] The court rejected this request, stating that if such a trust were to be declared, it would "defeat the fundamental bankruptcy policy of creditor equality" and thereby strip section 551 of the Bankruptcy Code[5] of its meaning. According to the court, a conceivable scenario would be that "an individual creditor could compel the bankruptcy trustee to exercise his statutory avoiding powers for the sole and ex-

---

2. An exception existed under the former Bankruptcy Act, wherein if the trustee refused to commence an action after a proper request had been made, an interested party could be allowed do so in his name or in the name of the trustee if leave was given by the court. See 2 Cowans Bankruptcy Law and Practice § 475, at 65 (2d ed. 1978). Presumably, this exception survives under the Code.

3. All of the cases cited by the appellant involve after-acquired general intangibles, however, all are clearly distinguishable as none directly addresses the question presented here—namely, whether the right to receive preferences is assignable. See e.g., In re Sunberg, 729 F.2d 561 (8th Cir.1984) (payment-in-kind ("PIK") payments assignable); In re Metric Metals Int'l, Inc., 20 B.R. 633, 636 (S.D.N.Y.1981) (tax refunds assignable); Holt v. United States, 13 U.C.C.Rep. Serv. 336 (D.D.C.1973) (patent application assignable).

4. The plaintiff in First Capital argued that the escrow funds disbursed by the debtor were traceable in that they went from the plaintiff to the debtor, to a third party, and then back to the debtor. The court held that the funds were untraceable because the disbursement of the trust funds left no product. 60 B.R. at 917. Interestingly, the appellant does not argue that the amounts paid by Integrated Testing are traceable.

5. Section 551 states:
   Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.
   11 U.S.C. § 551.

clusive benefit of that creditor." *Id.* Thus, the court refused to imply a constructive trust.

Although the legal arguments advanced by the plaintiffs in *First Capital* and this case differ, the result sought is the same: indirectly utilizing the trustee's avoidance power to benefit certain creditors exclusively. I therefore find persuasive the reasoning of the court in *First Capital* that to allow the appellant to claim these preferences would frustrate the policy of equal treatment of creditors under the Code and would contradict the plain meaning of section 551 of the Bankruptcy Code. Consequently, the appellant should not be entitled to the preference proceeds to the detriment of the estate even though the funds originally might have been subject to the appellant's security interest.

■ In light of the above, I reject the appellant's argument that the appellant could have obtained the right to recover the preferences through an assignment. Since the right to recover preferences may not be assigned, it cannot be considered a proceed or general intangible under state law. Consequently, there is no perfected security interest in these funds under N.J.S.A. 12A:9–306(4) and hence none under section 552 of the Bankruptcy Code.

### III.

■ The trustee suggests an additional reason why the preferences should not be subject to a security interest. The trustee points to the court's decision in *In re Gross-Feibel Co., Inc.*, 21 B.R. 648 (Bankr. S.D.Ohio 1982), in which the court was asked to find that state unemployment tax refunds and unearned insurance premiums were subject to the security interest of a creditor bank. As in this case, the creditor bank argued that the funds were proceeds. The applicable standard, where a creditor seeks to characterize after-acquired funds as proceeds subject to a security interest, according to the court is as follows:

> [P]roceeds of collateral may be held to be secured by a pre-petition security interest only if the collateral which produces

the proceeds was "acquired" by the debtor prior to the commencement of the case. [citing 4 Collier on Bankruptcy, 552.02 at 552–5 (15th ed. 1981)]

. . . .

> For the Bank to succeed by reason of 11 U.S.C. 552 it must be shown that the debtor "acquired" the "property" prior to the filing of the petition. Very specifically, it must appear that debtor had a right to the refunds prior to the filing of the petition.

*Id.* at 649–50. According to the court, the "property" was not the actual checks involved, but rather was the right to recover those funds. *Id.* at 649. In this case, as pointed out by the trustee, the "property" the appellant seeks to retain is the right to recover preferences.

The appellant agrees that if the right does not exist prior to the commencement of the action, then there is no right to claim proceeds under section 552(b). Appellant's Reply Brief at 2. The appellant argues, however, that the right to recover did attach prior to the filing but was contingent, as are most intangible rights, on a filing in bankruptcy. I cannot accept this argument as the right to recover preferences clearly attaches only post-petition, and even then the right is vested exclusively in the trustee; the debtor cannot assign this right. Thus, since the debtor never possessed the right to institute a preference action, the appellant could not have " 'acquired' the [right] prior to the filing of the petition" as required by section 552, and consequently the appellant can have no security interest in the funds recovered in the preference action.

Additionally, it makes little sense to allow the appellant to recover from the trustee what it could not have received from the debtor absent the preference action. In other words, since the debtor could not have recovered the funds it paid to its other creditors, it should not be able to assign this right to the appellant.

### IV.

For the foregoing reasons the order of the bankruptcy court granting summary

judgment in favor of the trustee is affirmed.