**In re LUDFORD FRUIT PRODUCTS, INC., a California corporation, Debtor.**

**Dennis McGOLDRICK, Chapter 7 Trustee, Plaintiff–Counterdefendant,**

v.

**JUICE FARMS, INC., a Florida Corporation, Defendant–Counterplaintiff.**

**Bankruptcy No. LA 87–00994 VZ. Adv. No. LA 88–01534 VZ.**

United States Bankruptcy Court, C.D. California.

April 13, 1989.

Gregory S. Abrams, Tarzana, Cal., for plaintiff/counterdefendant.

John E. McDermott, McDermott, Will & Emery, Los Angeles, Cal., for defendant/counterplaintiff.

## MEMORANDUM OF DECISION

VINCENT P. ZURZOLO, Bankruptcy Judge.

In this adversary proceeding, the trustee seeks avoidance and recovery of payments received by an undersecured creditor during the ninety days preceding the filing of the debtor's bankruptcy petition. The following issues arise:

(1) Does the earmarking doctrine apply?

(2) Can preferential transfers be made to a partially secured creditor?

(3) Does the defendant have a pre-petition or a post-petition security interest in the estates' preference recoveries?

# I.

## STATEMENT OF FACTS

The parties are in agreement as to nearly all relevant facts as evidenced by their Joint Stipulation of Facts ("Joint Stipulation").

Ludford Fruit Products, Inc., the debtor in this case ("Debtor"), was in the business of canning and freezing juice products. On November 30, 1982, Debtor entered into a financing agreement with Foothill Capital Corporation ("Foothill"). Foothill advanced funds to Debtor based upon specified percentages of Debtor's accounts receivables. Debtor used the monies advanced by Foothill for payroll, purchase of inventory, and other ordinary costs of doing business.

To secure repayment of its loans, Foothill obtained a security interest in all, or nearly all, of Debtor's personal property. Foothill's collateral included, *inter alia,* Debtor's then existing and after-acquired general intangibles and proceeds. Foothill perfected its security interest in Debtor's personal property when it recorded its "UCC–1 Financing Statement" in November 1982.

Juice Farms, Inc. ("Juice Farms"), the defendant, was a supplier of juice products to Debtor. By June 1985, Debtor owed approximately $975,000 to Juice Farms. As a condition to Juice Farms continuing to supply orange juice products to Debtor, Juice Farms and Debtor entered into a Security Agreement on June 18, 1985 ("Juice Farms' Security Agreement"). Debtor granted Juice Farms a security interest in much of Debtor's personal property including its then existing and after-acquired general intangibles and proceeds. To perfect its security interest, Juice Farms recorded an "UCC–1 Financing Statement" on July 22, 1985.

Apparently Debtor's business did not flourish. On January 20, 1987 Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. Immediately thereafter, Debtor filed its "Ex Parte Motion for Order Authorizing Debtor in Possession to Obtain Credit and Incur Secured Debt on an Interim Basis" ("Debtor's Cash Collateral Motion"). With Foothill's consent, Debtor sought authorization to use Foothill's and Juice Farms' cash collateral. Juice Farms opposed the relief sought by Debtor.

After a complete and contested hearing, the court[1] granted Debtor's Cash Collateral Motion. To provide adequate protection of Foothill's and Juice Farms' interest in the affected collateral, the court granted Foothill and Juice Farms replacement liens in all post-petition assets of Debtor in the same priority and extent as their pre-petition security interests.

In making her ruling on Debtor's Cash Collateral Motion, Judge Fenning found that Juice Farms' claim was secured by Debtor's property to the extent of $353,000. The remainder of Juice Farms' claim, $1,109,034.93, was apparently unsecured.[2] Neither Debtor, Foothill, nor Juice Farms objected to or appealed from the bankruptcy court's findings or order.

Debtor's efforts to reorganize failed. On July 21, 1987, Debtor's Chapter 11 case was converted to one under Chapter 7. Dennis McGoldrick ("Trustee"), plaintiff herein, was appointed trustee of Debtor's bankruptcy case. On August 26, 1988, Trustee filed the present adversary proceeding.

Trustee alleges that payments totalling $175,000 ("the Payments") made by Debtor to Juice Farms during the ninety days prior to the filing of Debtor's bankruptcy petition were preferential transfers avoidable under Section 547 and recoverable under Section 550 of the Bankruptcy Code. In its Answer, Juice Farms admits, and the parties have so stipulated, that all elements of Section 547(b), except for subsection (5), are satisfied. Juice Farms alleges in its Counterclaim that any and all preference recoveries are Juice Farms' collateral subject to its pre-petition security interest.

---

1. The Honorable Lisa Hill Fenning, United States Bankruptcy Judge, Central District of California, presided over this case at that time.

2. 11 U.S.C. § 506(a).

## II.

### ISSUES PRESENTED

A.  Were the Payments property of the Debtor i.e., does the earmarking doctrine apply?

B.  Did the Payments have "preferential effect" under Section 547(b)(5)?

C.  Does Juice Farms' pre-petition security interest attach to preference recoveries?

D.  Does Juice Farms' post-petition replacement lien attach to preference recoveries?

## III.

### DISCUSSION

A.  *The Earmarking Doctrine*

The introductory clause of Section 547(b) of the Bankruptcy Code provides:

> (b) Except as provided in subsection (c) of this section, *the trustee may avoid any transfer of an interest of the debtor in property....* (Emphasis added.)

In addition to the five elements set forth in Subsections (1) through (5) of Section 547(b), Trustee also must establish that the payments were property of Debtor.

In light of the admissions made by Juice Farms in its Answer and in the Joint Stipulation, there would appear to be no doubt that the transfers in question were the property of Debtor.[3] Nevertheless, Juice Farms argues that Trustee's recovery under Section 547 is blocked by the so-called "earmarking doctrine."

A complete yet concise analysis of the history, purpose and proper application of the earmarking doctrine is provided by the Eighth Circuit Court of Appeals in *In re Bohlen Enterprises, Ltd.*, 859 F.2d 561, 564–567 (8th Cir.1988). It is not necessary to repeat that analysis here. In sum, the earmarking doctrine is a judicially created defense to preference recovery actions. Originally the doctrine applied only when a

party other than the debtor, such as a guarantor or surety, directly satisfied with its own property or funds an existing obligation of the debtor. Courts have since extended the doctrine to include situations in which a third party lends money to the debtor for the agreed purpose of satisfying a specified existing claim of the debtor.

I join with the *Bohlen* court in questioning this expansion of the earmarking doctrine beyond its original application. When a guarantor pays a primary obligation with the guarantor's own funds, common sense dictates that no property of the debtor is transferred. Common sense is stretched to the breaking point when a court finds that funds loaned to a debtor, even for the specified purpose of paying an existing creditor, do not become property of the debtor.

■ I can find no controlling authority in this circuit on the earmarking doctrine. Upon review of the authorities cited by the parties and discovered by the court, I conclude that the earmarking doctrine logically can be applied only when a non-debtor party directly satisfies the claim of the debtor's creditor with the non-debtor party's own property or funds. Any extension of the doctrine beyond this is contrary to the plain meaning of Section 547(b) and violates the purposes and policies behind preference recoveries. *Bohlen Enterprises, Ltd.*, 859 F.2d 566 & n. 10.

■ Even considering the expanded version of the earmarking doctrine, Juice Farms is not entitled to its protection. The monies paid to Juice Farms were either funds advanced by Foothill pursuant to its financing arrangement with Debtor, or funds obtained by Debtor in the ordinary course of its business in which Foothill held a security interest senior to Juice Farms'. Juice Farms has presented no evidence that the funds paid to it came from any entity other than Debtor.[4] Further, Juice Farms

---

3.  In the Joint Stipulation, both parties agree that the only issue in dispute under 11 U.S.C. § 547(b) is whether Trustee has satisfied subsection (5).

4.  Juice Farms asserts in its briefs that Paragraph 1 of the Stipulation provides that the Payments were made by Foothill from its own property. The stipulation provides no such thing. Rather, it states "[D]uring the Preference

has not proved that Foothill and Debtor modified their financing agreement to provide that such funds were loaned to Debtor for the sole purpose of paying Juice Farms. *See· e.g., In Re Sun Railings Inc.,* 5 B.R. 538 (Bankr.S.D.Fla.1980).[5]

Thus the Payments were property of Debtor.

### B. The "Preferential Effect" Test of Section 547(b)(5)

Subsection 547(b)(5) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by provisions of this title.

The "preferential effect" test of Subsection (5) is the pivotal element of Section 547(b) because it determines whether the defendant received more than other similarly classified claimants would in a hypothetical Chapter 7 distribution. If the defendant received more as a result of the transfer than it would have received in an equal, *pro rata* Chapter 7 distribution, the transfer is preferential and must be avoided.

The preferential effect of a transfer is rarely in dispute because of the plaintiff's usually simple burden of proof—that "[t]he dividend to the defendant-creditor's class in a Chapter 7 liquidation would be less than 100%...." Countryman, "The Concept of a Voidable Preference in Bankruptcy," 38 Vanderbilt L.R. 713, 733–38 (1985) ("Countryman").[6] This issue is in dispute in this adversary proceeding for two reasons: (1) Juice Farms holds a partially secured claim; and (2) Section 547(b)(5) does not make clear on which date the hypothetical Chapter 7 distribution should be hypothesized.

#### 1. Transfer to a Partially Undersecured Creditor During Preference Period

■ If an otherwise avoidable transfer is made on account of a secured claim, the secured claimant does not receive more than it would in a Chapter 7 liquidation and distribution. Therefore there would be no preferential effect under 11 U.S.C. § 547(b)(5). 4 *Collier on Bankruptcy,* ¶ 547.08, pp. 547–40 (15th ed. 1988). If Juice Farms can establish that the Payments were made on account of its secured claim, no avoidable preference occurred.

According to the court's order granting the Debtor's Cash Collateral Motion, on the date the Debtor filed its bankruptcy petition Juice Farms' collateral was worth $353,000 and the remaining deficiency of approximately $1,100,000 was unsecured.

Juice Farms now disputes Judge Fenning's finding that Juice Farms' claim was

---

Period, [Debtor] transferred by check, wire transfer, cashier's check(s) or by direct payment from its secured lender, Foothill Corp. cash or cash equivalents to Juice Farms in the amount of $175,000." The plain meaning of this provision of the Stipulation is that *Debtor* made the Payments to Juice Farms in a variety of ways.

5. To prove its case under the expanded version of the earmarking doctrine, Juice Farms must demonstrate that there was an agreement between Foothill and Debtor that Foothill was lending money for the specific purpose of paying Juice Farms. *Bohlen Enterprises, Ltd.,* 859 F.2d 566. There is no evidence of any such agreement.

6. Professor Countryman discusses in his article the holding of some courts that a trustee makes his case under Subsection (5) of Section 547(b)

by proving that the defendant received a larger percentage of his claim than he would receive in its dividend in a Chapter 7 case. *See* cases listed in Footnote 137 of Countryman. For the reasons set forth in Countryman, this formulation of the 547(b)(5) test is inconsistent with the United States Supreme Court's decision in *Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936). It follows logically from *Palmer Clay* that if claimants in the same class as the preference defendant have received or will receive anything less than a 100% dividend, then the preference defendant will have received more than similarly situated claimants, assuming the other elements of Section 547(b) were established by the trustee.

secured at the commencement of this case only to the extent of $353,000. It is far too late for such a challenge. Juice Farms interposed no timely objection to the court's findings, and has never, to this court's knowledge, appealed the resulting cash collateral order.

The only rebuttal offered by Juice Farms in support of its tardy challenge is its proof of claim in which it asserts that its claim is fully secured. Juice Farms offers no evidence that at the commencement of this case there was collateral of sufficient value to secure both Foothill's and Juice Farm's claims.

In view of an uncontested and final ruling of this court, made within weeks of the pertinent date,[7] I find that approximately $1,100,000 of Juice Farms' claim was unsecured when the Debtor's bankruptcy case began.

The court in *In re McCormick*, 5 B.R. 726 (Bankr.N.D.Ohio, 1980), considered payments made to a partially undersecured creditor during the preference period. In *McCormick*, the preference defendant argued that the alleged preferential transfers were allocated to the secured portion of its claim. In rejecting this argument the *McCormick* court reasoned:

> The court must assume in the absence of proof to the contrary, that the payments were credited towards the unsecured portion of the debt, since this course of action would comport with standard business practice. Consequently, one must conclude that BancOhio [partially undersecured creditor] received greater payment on its unsecured claim than other unsecured creditors and that the transaction satisfied the requirements of section 547(b)(5).

*Id.* at 729–730; *See also In re Barash*, 658 F.2d 504 (7th Cir.1981) (expressly reaffirming the reasoning in *McCormick*); *In re Conn*, 9 B.R. 431 (Bankr.N.D.Ohio, 1981).

The court in *Drabkin v. A.I. Credit Corp., (In re Auto Train)*, 800 F.2d 1153 (D.C.Cir.1986), went beyond the holding in *In re McCormick, supra*, and declared:

> [W]e believe, therefore, that the "presumption" [payments to an undersecured creditor are attributable to the unsecured portion of the debt] noted in the *McCormick* case is properly treated as conclusive, not subject to rebuttal based on evidence of the parties' intent.

*Id.* at 1157.

In the present case, Juice Farms did not present any evidence that it applied the Payments to the secured portion of its claim. Rather, Juice Farms argues that the more likely economic reality is that the Payments were attributed to the secured portion of its claim and thus did not diminish the Debtor's estate.

Persuasive case law and simple logic dictate that the Payments were apportioned to the unsecured portion of Debtor's debt to Juice Farms. It is difficult to imagine any circumstances in which a partially secured creditor would endanger its secured position by reducing its secured claim rather than its unsecured claim. Further, even if Juice Farms had applied the Payments to its secured claim, Juice Farms would have had to release collateral to the Debtor worth $175,000. Juice Farms does not contend and has not proved that it released any collateral to Debtor. Therefore, I hold that the Payments were apportioned to the unsecured portion of Juice Farms' claim.

### 2. Timing of Hypothetical Chapter 7 Liquidation and Distribution

In the briefs and evidence submitted, the parties failed to consider on which date the hypothetical Chapter 7 liquidation and distribution should be calculated. I alerted counsel to this issue at trial and it was argued in post-trial briefs.

The most helpful authority on this issue is *In re Tenna Corporation*, 801 F.2d 819 (6th Cir.1986). The *Tenna* court considered facts remarkably similar to this case. In *Tenna*, the debtor filed a Chapter 11 case that was converted to a Chapter 7 case ten months later. The Chapter 7 trustee filed a preference adversary pro-

---

7. *See* Section B, 2, *infra.*

ceeding over a year after the original filing of the Chapter 11 petition.

The *Tenna* court followed the reasoning set forth in the United States Supreme Court case, *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936), and concluded that the date on which the bankruptcy petition was filed, and not the date on which the turnover proceeding was brought to avoid a preferential transfer, was the date on which the plaintiff should construct a hypothetical Chapter 7 distribution to determine whether the "preferential effect" test was satisfied. *See also, In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir.1985); Countryman, at pp. 740–742.

■ I find the *Tenna* reasoning persuasive and conclude that Trustee must look to the date of the filing of the bankruptcy petition to construct a hypothetical Chapter 7 liquidation for purposes of Section 547(b)(5).

■ I find that a general unsecured claim, such as Juice Farms' deficiency claim for approximately $1,100,000, would not be satisfied in full if the estate were liquidated and distributed on January 20, 1987, the date this case commenced. This finding is based upon Judge Fenning's final and uncontested finding that there was insufficient collateral to satisfy Juice Farm's claim, despite the fact that Juice Farms held a junior security interest in practically all of Debtor's property. Therefore I conclude that the "preferential effect" test of 11 U.S.C. § 547(b)(5) is met and the Payments are avoidable preferential transfers.

### *Juice Farms' Counterclaim*

In its Counterclaim, Juice Farms alleges that it holds a pre-petition security interest in any recoveries the Trustee obtains in adversary proceedings initiated under 11 U.S.C. § 547, including this one. If this allegation is correct, Juice Farms argues that even if the Trustee is able to prove that the Payments are preferential transfers, it would be a meaningless act to order Juice Farms to turn over the preference because it would be Juice Farms' own collateral. Having determined that the Pay-

ments to Juice Farms are avoidable under 11 U.S.C. § 547(b), it is necessary for me to determine whether Juice Farms has a security interest in these preference recoveries, and, if it does, whether or not Juice Farms should turn over funds equal to the Payments to the Trustee.

### C. *Juice Farms' Pre–Petition Security Interest*

■ As discussed in section I above, Debtor granted Juice Farms a security interest in general intangibles and proceeds prior to the commencement of Debtor's bankruptcy case. Section 9106 of the California Commercial Code defines "general intangible" as "any personal property, including things in action, other than goods, accounts, chattel paper, documents, instruments and money." A "thing in action" is defined as "a right to recover money or other personal property by a judicial proceeding." California Civil Code § 953.

Juice Farms contends that since its security interest included both collateral that existed at the time the Security Agreement was executed and that Debtor acquired later, the preference actions and resulting recoveries obtained by Trustee for the benefit of Debtor's bankruptcy estate are collateral subject to Juice Farm's pre-petition security interest. Although simple and internally consistent, this analysis does not take into account 11 U.S.C. § 552 and therefore is incomplete.

Section 552(a) provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

Neither the preference actions nor the resulting recoveries in this case came into being until after Debtor filed its Chapter 11 petition. Therefore, Section 552(a) prevents Juice Farms' pre-petition security interest from attaching to the preference actions or the preference recoveries.

An exception to Section 552(a) is contained in Section 552(b) of the Bankruptcy Code. Section 552(b) provides:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, *if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, rents, of profits of such property, then such security interest extends to such proceeds, products, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law,* except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (Emphasis added.)

Simply stated, Section 552(b) provides that if a pre-petition security interest encumbers proceeds of pre-petition collateral, the post-petition proceeds of pre-petition collateral will be subject to the creditor's pre-petition security interest.

Juice Farms has failed to cite any persuasive authority that provides that the "general intangibles" at issue here—the bankruptcy estate's right to recover preferences under 11 U.S.C. § 547—are the proceeds of Juice Farms' pre-petition collateral. Logically, it is difficult to understand how an avoidance power action that springs into being with the commencement of a bankruptcy case could be the proceed of *any* form of collateral.

California Commercial Code § 9306(1) defines "proceeds" to mean "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." The bankruptcy estate's right to sue under 11 U.S.C. § 547 is not received by the bankruptcy estate in exchange for the transfer of any property. Rather, it is a special power Congress grants to the fiduciary in charge of a bankruptcy estate, trustee or debtor in possession, to implement the equal distribution of assets among the various classes of claims in the estate.

To conclude that preference actions are the proceeds of collateral held pursuant to a pre-petition security interest would not only violate logic but also the policy behind the avoidance powers. *See In re Integrated Testing Products Corp.,* 69 B.R. 901, 904–05 (D.N.J.1987). My conclusion is also buttressed by the language of California Commercial Code § 9306(4) which lists the types of proceeds in which a secured party has a perfected security interest in the event of an insolvency proceeding. Avoidance power choses in action are not listed there. Therefore, by its own terms, the exception set forth in subsection (b) of Section 552 does not allow Juice Farm's pre-petition security interest to attach to this estate's § 547 actions.

Juice Farms also argues that the *recoveries* obtained by Trustee pursuant to 11 U.S.C. § 547, contrasted with the right to recover, are proceeds of its pre-petition collateral. Juice Farms relies on the case of *In re Figearo,* 79 B.R. 914 (Bankr.D.Nev. 1987), for the proposition that a trustee's preference recoveries are subject to a pre-petition security interest.

In *Figearo,* the court considered whether a trustee's compromise of a fraudulent conveyance action involving the recovery of the personal property collateral itself, rather than funds equal to the value of the property, could be claimed by the pre-petition secured creditor. *Id.* at 918. The court held that since the secured creditor had a security interest in the property that was recovered by the trustee in its fraudulent conveyance action, the pre-petition security interest would attach to the proceeds of the fraudulent conveyance action, i.e. the consideration received by the bankruptcy estate for settling its claim against the fraudulent conveyance defendant. *Id.* at 918.

In this proceeding Juice Farms has failed to prove what the secured creditor proved in *Figearo, supra,* namely, that its security interest attached to *identifiable* collateral that was the subject of the avoidance ac-

tion. As Juice Farms has failed to identify the source of payments, California Commercial Code § 9306(4) prevents Juice Farms' pre-petition security interest from attaching to preference recoveries in this case. This statute is applicable by virtue of 11 U.S.C. § 552(b), quoted *supra.* It provides in pertinent part:

> In the event of insolvency proceedings instituted by or against the debtor, the secured party with a perfected security interest in proceeds has a perfected security interest in all the following proceeds:
>
> > (b) In identifiable cash proceeds in the form of money which is neither commingled with other money or deposited in a deposit account prior to the insolvency proceedings ...
> >
> > (d) In all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is *both:*
> >
> > > (i) Subject to any right of set off ...
> > >
> > > (ii) Limited to an amount not greater than the amount of any cash proceeds received by the debtor within 10 days before the institution of the insolvency proceedings less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a), (b), and (c).

West's Annotated California Commercial Code (1989 Ed.).

Juice Farms has failed to produce any evidence that its prepetition security interest attaches to the preference recoveries in this bankruptcy case pursuant to California Commercial Code § 9306(4). *See also Integrated Testing Products Corp.*, 69 B.R. 901, 903–04 (D.N.J.1987). Therefore Juice Farms has no pre-petition security interest in the preference recoveries obtained by Trustee for this estate.

### D. *Juice Farms' Post–Petition Replacement Lien*

■ In the alternative, Juice Farms alleges in its trial brief that its Post–Petition Replacement Lien granted as a result of Debtor's Cash Collateral Motion encumbers the estate's preference recoveries. Juice Farms did not allege this in its Counterclaim as a basis for relief.

Rule 15(b) of the Federal Rules of Civil Procedure, as incorporated by Rule 7015 of the Bankruptcy Rules, provides in relevant part:

> (b) *Amendments to Conform to the Evidence.*
>
> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party, at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

*See also, In re Meyertech Corp.*, 831 F.2d 410 (3rd Cir.1987); *Matter of Sims Office Supply, Inc.*, 94 B.R. 744 (Bankr.M. D.Fla., 1988); *In re Kanak*, 85 B.R. 483 (Bankr.N.D.Ill.1988).

Both Juice Farms and the Trustee presented evidence concerning and argued the merits of Juice Farms' post-petition replacement lien. Thus, even though Juice Farms did not plead the existence or effect of its post-petition replacement lien, I will consider Juice Farms' argument.

As previously noted, the order granting Debtor's Cash Collateral Motion gave Juice Farms a post-petition replacement lien "of the Debtor estate of the same type and description as the Juice Farms Collateral, which replacement liens and security interests shall have the same priority, extent, and validity as exists with respect to the pre-petition Juice Farms Collateral." Since the preference actions necessarily arose post-petition, they are post-petition choses-in-action and hence, general intangibles. Any recoveries in these actions would constitute a product of the general intangibles. Thus, Juice Farms' Post–Petition Replace-

ment Lien does attach to the Debtor's estate's preference recoveries.

## 1. Turnover of Preferences

 Although Juice Farms has a post-petition replacement lien in preference action recoveries, that lien is second in priority to Foothill's post-petition replacement lien. It is undisputed that Foothill is still owed approximately $318,000 on its claim. What is in dispute is whether there will be any funds in this estate left to satisfy Juice Farm's claim after Foothill's claim is satisfied, if it ever is.

There are no assets left in this Chapter 7 estate except recoveries in preference actions. In response to an interrogatory posed by Juice Farms, Trustee has sworn that the "likely" recovery on all preference actions will not be enough to satisfy Foothill's claim. Juice Farms argues that Trustee's estimation of the value of potential preference recoveries is suspect and that there will be more than enough funds generated to pay Foothill.

I see no merit in joining the guessing games engaged in by the parties. It is Juice Farms' burden to persuade this court that the net preference recoveries, exclusive of the preferences received by Juice Farms, are sufficient to satisfy Foothill's claim in order to prevail upon its Counterclaim. Juice Farms has not carried this burden. I therefore will not bar Trustee from recovering preferences received by Juice Farms. If and when Foothill's claim is fully satisfied and funds remain in this bankruptcy estate, Juice Farms may seek relief at that time.

## IV.

## CONCLUSION

This memorandum of decision constitutes findings of fact and conclusions of law within the meaning of Bankruptcy Rule 7052. The Trustee shall lodge a proposed judgment consistent with this memorandum.