**In re CAMBRIA CLOVER MERCANTILE CO., INC. t/a Jean Joint, t/a Ontario Factory Outlet, t/a Big Store, t/a Anybodies, Debtor.**

**Bankruptcy No. 83–03755K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 23, 1985.

Joseph S.U. Bodoff, Philadelphia, Pa., for debtor.

John A. Wetzel, Philadelphia, Pa., Lawrence Gotlieb, New York City, for Creditors' Committee.

Morton Newman, Andrew D. Bershad, Philadelphia, Pa., for Continental Bank.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

In this case, the debtor-in-possession has moved for a court order directing the dis-

bursement of funds, which were acquired by the debtor after the bankruptcy was commenced through § 547 preference actions. Both the secured creditor and the Committee of Unsecured Creditors claim the funds. For the reasons stated herein, we find that non-bankruptcy, state law may be applied to resolve this dispute. Therefore, we will direct the parties to prepare for an evidentiary hearing on the issue of whether the preference monies are subject to the security interest of the secured creditor under state law.

The facts relevant to the issue before the Court are as follows: [1]

Cambria Clover Mercantile Co., Inc. ("debtor-in-possession" or "debtor") filed a petition under Chapter 11 of the Bankruptcy Code ("Code") on September 27, 1983. The debtor subsequently filed a Motion for Order Directing Disbursement of Funds, which alleges the following:

   (a) that the debtor has filed sixteen (16) adversary complaints against various defendants seeking the recovery of preferences which total $51,112.54;

   (b) that Continental Bank has a security interest in all of the debtor's inventory, equipment, accounts receivable, general intangibles, and all cash and non-cash proceeds thereof;

   (c) that both Continental Bank and the Unsecured Creditors' Committee have made a claim to the fund which contains the amounts recovered by the debtor as a result of the filing of the preference actions;

   (d) that the debtor wishes to disburse the funds but has been unable to resolve the issue as to whom the funds should be paid.

Both Continental Bank ("Bank") and the Creditors' Committee ("Committee") filed answers to the debtor's motion, each claiming that it is entitled to the funds. A hearing was held on the motion on October 16, 1984. At the hearing, the Bank asserted a perfected security interest in the mo-

nies recovered through the preference actions, pursuant to section 9–306 of the Uniform Commercial Code, as adopted in Pennsylvania, 13 Pa.Const.Stat. § 9306, and other state law. The Bank requested that it be allowed to proceed with a ninety (90) day discovery period in order to prepare for an evidentiary hearing on the issue of whether the monies recovered from the preference suits are covered by its security interest.[2]

The Committee, relying on § 552(b) of the Code, argued that bankruptcy law precludes the application of non-bankruptcy law to the instant dispute; therefore, an evidentiary hearing is unnecessary.

The Court directed the parties to submit memoranda of law on the limited issue of the applicability of non-bankruptcy law to the matter at bench.

### DISCUSSION

Section 547(b) of the Code, 11 U.S.C. § 547, authorizes a trustee, or debtor-in-possession acting as trustee, to avoid any transfer of property of the debtor—

   (1) to or for the benefit of a creditor;

   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent;

   (4) made—

   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer—

   (i) was an insider; and

   (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

   (5) that enables such creditor to receive more than such creditor would receive if—

   (A) the case were a case under Chapter 7 of this title;

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Bankruptcy Rules.

2. The Bank will seek to discover what became of its secured collateral and to trace the proceeds of that collateral.

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Section 552 of the Code, 11 U.S.C. § 552, provides as follows:

*Postpetition effect of security interest*

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if *the debtor and a secured party enter into a security agreement before the commencement of the case* and *if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds*, product, offspring, rents, or profits of such property, *then such security interest extends to such proceeds*, product, offspring, rents, or profits *acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law*, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (emphasis added)

The Committee takes the position that the Bank's security interest cannot extend to the preference funds because, as a matter of law, funds recovered by a debtor or trustee through § 547 preference suits can never be subject to a pre-petition security interest. The Committee's argument hing-

es on the fact that the funds in question were recovered by the debtor through § 547 preference actions. The Committee does not deny that § 552(b) of the Code allows *certain* pre-petition security interests to extend to property acquired by a bankruptcy estate after a petition in bankruptcy is filed. Rather, the Committee interprets the language at the beginning of § 552(b) "Except as provided in Section .... 547" to mean that a pre-petition security interest may never extend to property acquired after a bankruptcy petition is filed *if that property was acquired by a § 547 preference action*. Of course, if the Committee's interpretation of § 552(b) is correct, and § 552(b) is not applicable here, § 552(a) would prevent the Bank's pre-petition security interest from attaching to the preference funds, regardless of the effect of non-bankruptcy law.

We cannot agree with the Committee's interpretation of the limiting effect of § 547 on § 552(b), however. As the Bank points out in its memorandum of law, the reason the "Except as provided in section .... 547" language is included in § 552(b) is that if a pre-petition security interest was acquired by a creditor within the preference period described in § 547, and if the acquiring of the security interest otherwise constituted an avoidable preference under § 547, then the security interest cannot be permitted to attach to after-acquired property *because the security interest is avoidable under § 547*.

The Bank's interpretation is fully supported by Collier,[3]

"*A secured party's right to proceeds is subject to the trustee's power under section 547 to avoid the security interest as a preferential transfer. If the security interest is avoided as a preference,*

---

**3.** The inclusion of sections 363, 506(c), 522, 544, 545 and 548 in the language of § 552(b) lends further support for the Bank's position because these sections, like section 547, allow the Court flexibility in limiting the effect of pre-petition proceeds clauses. The other sections to which § 552(b) is subject include section 363 (the trustee or debtor-in-possession may use, sell or lease proceeds, product, offspring, rent, or profits under § 363), section 506(c) (costs for trustee's

preservation of collateral), section 544 (trustee's hypothetical lien creditor and bona fide purchaser status), section 545 (trustee's power to void certain statutory liens, including liens for rent), and section 548 (fraudulent transfers). Under section 548, for example, if the security interest is avoided, the secured party will lose any rights in proceeds under section 552(b). 4 *Collier on Bankruptcy* ¶ 552.02, p. 552–7, n. 10 (15th ed. 1985).

*then the secured party has no rights in proceeds, products, offspring, rents or profits under section 552(b).* Moreover, as previously noted, the avoided transfer is automatically preserved and can be asserted against proceeds for the benefit of the estate as against junior lienors." (Emphasis added).

4 *Collier on Bankruptcy* ¶ 552.02, p. 552–7, n. 9 (15th ed. 1985).

Therefore, according to the language "Except as provided in section .... 547", contained in § 552(b), the Bank's pre-petition security interest in all cash and non-cash proceeds of the debtor's inventory, equipment, accounts receivable, and general intangibles is avoidable under § 547 if it was acquired during the preference period, and the other elements of § 547 are met. We do not interpret that language to mean, as the Committee has argued, that a pre-petition security interest may never extend to property which is acquired post-petition through a § 547 preference action. In order to determine whether the Bank's security interest extends to the preference funds in this case, § 552(b) provides that we may look to the security agreement between the Bank and the debtor and to applicable non-bankruptcy law.[4]

The Bank has identified some of the issues of fact which must be resolved in order to determine whether the Bank or the Committee is entitled to disbursement of the preference funds. They are:

(a) whether the funds recovered through the preference actions include "identifiable cash proceeds" pursuant to U.C.C. § 9–306(3)(b), 13 Pa.Cons.Stat. § 9306(c)(2);

(b) whether the funds are proceeds of the inventory, equipment, accounts receivable or general intangibles as to which the Bank is secured;

(c) whether the funds are proceeds of funds which were commingled with the debtor's other funds;

(d) whether the funds are proceeds of funds that were not transferred in the debtor's "ordinary course of business". See, Comments to U.C.C. § 9–306;

(e) whether the funds are proceeds of funds which were not transferred in good faith and/or without knowledge of the Bank's security interest in the proceeds. See U.C.C. § 1–201(9); and

(f) when the debtor became insolvent under state law.

Therefore, we will issue an order permitting the parties to take discovery relating to the above-identified state law issues for a period of sixty (60) days. At the expiration of the sixty (60) day period, the parties may move the Court for additional time if discovery has not been completed. If discovery is completed within sixty (60) days, an evidentiary hearing on the issue of whether the Bank or the Committee is entitled to disbursement of the preference funds will be held on the date set forth in the order.

---

**4.** Our conclusion that state law may be applied to determine whether a secured creditor is entitled to post-petition property is consistent with the one case cited by the Creditors' Committee for the opposite proposition. *In re C.E. Pontz & Son, Inc.,* 2 U.C.C.Rep.Serv. 1131 (E.D.Pa.1985), *aff'd.* 359 F.2d 436 (3d Cir.1966). The Court in *Pontz* looked to the Uniform Commercial Code, stating:

> Granted this, and granted a perfected security interest in proceeds, the rights of the petitioner are governed by the Uniform Commercial Code. The Code clearly defines in Sec-

tion 9–306(4) the interest which a secured party [with a perfected security interest in proceeds] has in the event of insolvency proceedings. Tit 12A, Section 9–306(4) Pa.Stat. Ann. There is no evidence in this case that Brownstone has any rights under this section. *See Howarth v. Universal C.I.T. Credit Corporation,* 203 F.Supp. 279, 283 (1 UCC Rep. 515) (W.D.Pa.1962). The lien of Brownstone which extended to the proceeds of the accounts receivable did not extend to the moneys received by the trustee in bankruptcy. *Id.* at 1133–34.