**In re ANTINARELLI ENTERPRISES, INC., Debtor.**

**ITT COMMERCIAL FINANCE CORPORATION, Plaintiff,**

v.

**John F. CULLEN, Trustee In Bankruptcy of Antinarelli Enterprises, Inc., Defendant.**

**Bankruptcy No. 84–1363–HL.
Adv. No. A86–1479.**

United States Bankruptcy Court, D. Massachusetts.

April 13, 1988.

Mark A. Stull, Schultz & Bednarz, Boston, Mass., for ITT.

John F. Cullen, Cullen & Resnick, Charlestown, Mass., trustee.

## MEMORANDUM ON RIGHTS TO A PREFERENCE RECOVERY

HAROLD LAVIEN, Bankruptcy Judge.

The matters before the Court are plaintiff's Motion for Partial Summary Judgment and defendant/trustee's Motion for Summary Judgment. Both have filed answers and affidavits. The issue before the Court is whether a perfected blanket security interest in present and after acquired assets extends to the cash recovered by a trustee in a preference action under 11 U.S.C. § 547.

On October 22, 1984, an involuntary Chapter 7 Bankruptcy Petition was filed against Antinarelli Enterprises, Inc., d/b/a Sound Advice (Debtor). Prior to filing, the plaintiff, ITT Commercial Finance Corporation ("ITT") and the debtor signed an "Agreement for Wholesale Financing" (security agreement by which the debtor granted a blanket security interest in present and after acquired assets on June 14, 1984 which agreement was perfected on July 3, 1984). Subsequently, on July 27, 1984, the Middlesex Superior Court ordered the appointment of Barry C. Klickstein as state receiver to enforce a previous state court judgment against the debtor in favor of E.I. DuPont deNemours & Co., Inc. ("DuPont") for the amount of $49,502.70.

The receiver never took control of the premises. The receiver and DuPont, instead, accepted a series of voluntary payments consisting of two $15,000 checks from the debtor's general bank account and $18,597.77 in American Express drafts.

Acting on receiver's motion, the state court discharged the receiver on October 9, 1984.

The Chapter 7 trustee brought suit to recover the payments to DuPont and the receiver as a preferential transfer under 11 U.S.C. § 547. After extensive litigation and two appeals, the trustee recovered $48,188.90 as a preferential transfer. *In re Antinarelli Enterprises, Inc.*, 49 B.R. 412 (Bankr.D.Mass.1985) *aff'd sub. nom.; E.I. DuPont deNemours & Co. v. Cullen*, 791 F.2d 5 (1st Cir.1986).

ITT states that part of the recovery can be traced to the collateral under its security agreement and asserts that it is entitled to trustee's preference recovery as a matter of law under three theories. ITT argues that: (1) ITT has a superior title to the cash recovered, and (2) ITT security interest extends to the trustee's preference recovery. The third argument is really subsumed in the other two and is really the basic argument, namely, that if ITT's position is superior to DuPont's, then the trustee is in no better position than DuPont when it preserves DuPont's position under 11 U.S.C. § 551. If the plaintiff prevails, then a later hearing is sought on the portion of the preference recovery that cannot be presently traced.

ITT asserts it has a title superior to that of the trustee to the money the trustee recovered from DuPont. This is based on a claim that ITT could have recovered, if there was no bankruptcy, the funds directly from DuPont who had no right to interfere with ITT's collateral under its blanket security interest.

ITT correctly cites numerous cases to establish that under 11 U.S.C. § 551 the trustee avoiding one security interest does not impair the rights of superior duly perfected security interest to the collateral. *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748 (W.D.N.Y.1986); *In re Kors*, 50 B.R. 874 (Bankr.Vt.1985); *In re Vermont Fiberglass, Inc.*, 44 B.R. 505 (Bankr.Vt. 1984); *Matter of Woodworks Contemporary Furniture, Inc.*, 44 B.R. 971 (Bankr. Wisc.1984); *In re Barry*, 31 B.R. 683 (Bankr.S.D.Ohio 1983); *In re Appalachian*

*Energy Industries, Inc.,* 25 B.R. 515 (Bankr.M.D.Tenn.1982). While the legal premise is correct, it is not relevant in this proceeding.

■ The first step in deciding who has title to the trustee's recovery is to determine whether the funds that were paid to the receiver and subsequently recovered by the trustee are collateral or proceeds.

ITT assumes the cash received from the sale of the debtor's inventory is collateral and not proceeds. This is clearly not so. The debtor was an electronics store and its only inventory was electronics and accessories, and not cash. The Appeals Court of Massachusetts has explicitly stated that under § 9–306, " 'proceeds' includes whatever 'is received when collateral ... is sold' ", *Mechanics National Bank of Worcester v. Gaucher,* 7 Mass.App. 143, 146, 386 N.E.2d 1052 (1979).

ITT could not recover the money paid to DuPont if there had not been a bankruptcy. ITT's claim to the DuPont money as proceeds of its collateral is governed by Mass. Gen.Laws ch. 106 § 9–306(3)(b). (This is the Massachusetts version of § 9–306 of the Uniform Commercial Code (U.C.C.)).

> (3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless ... (b) a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds ...

Cash proceeds are free of security interests except otherwise provided by state law or the U.C.C., *Parkersburg State Bank v. Swift Independent Packing Company,* 764 F.2d 512 (8th Cir.1985). Official comment to 2(c) to § 9–306 of the 1972 version of the U.C.C. makes it clear that:

> Where cash proceeds are covered into the debtor's checking account and paid

out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. Paying suppliers is part and parcel of the operation of a business and payment by check or other cash equivalents such as American Express drafts is precisely the type of payments the drafters of the U.C.C. presumably wanted to be free from the reach of secured creditors.

ITT cites no case nor has the Court's research found any that would prevent the debtor from using proceeds free of liens in the operation of its business absent any express contractual provision, and there is no such provision between ITT and the debtor. The one case ITT cites to show that a security interest in inventory has any significance in wholesaler-retailer relations actually has none, *Anderson Clayton & Co. v. First American Bank,* 614 P.2d 1091 (Okla.1980). *Anderson* discusses the relationship between a secured creditor and a voluntarily subordinated bank.

ITT also asserts that in order to qualify for the operation of business exception, the payments must be voluntary for them to be found in the ordinary course.[1] Footnote 8 of *Citizens National Bank v. Mid–State Development Co.,* 177 Ind.App. 548, 380 N.E.2d 1243, 1248–49 (1978) is cited as requiring payments be voluntary as a condition for ordinary course. *Citizens* footnote 8 and cases cited therein, discuss a totally different matter, namely, the right of a bank to set off against voluntary deposits by the debtor.

ITT could not have recovered money directly from DuPont under state law if there was no bankruptcy.

■ The second issue in determining whether ITT has a security interest in the trustee's preference recovery is whether the Bankruptcy Code section limiting prepetition security interests in assets acquired post-petition exempts trustee's pref-

---

1. While it is not at all clear that any such limitation exists on the actual expenditure of proceeds, the Court notes that the state court receiver never took control of the debtor because a series of payments—two checks for $15,-

000—were made by the debtor, and $18,597.77 in American Express drafts were turned over, and the receiver was discharged by the state court.

erence recoveries from the reach of pre-petition secured creditors, 11 U.S.C. § 552.[2] ITT argues that Section 552 should be interpreted loosely to favor secured creditors and, consequently, this Court should follow a sister bankruptcy court in finding preference recoveries are subject to pre-petition security interests, *In re Cambria Clover Mercantile Co., Inc.*, 51 B.R. 983 (Bankr.E. D.Pa.1985).

This Court cannot follow the *Cambria* decision. The plain language of Section 552 makes it clear that preference recoveries are not subject to pre-petition security interests unless the Court, after a hearing, orders otherwise, based on the equities of the case. Such equity might well exist if ITT had a right independent of the preference recovery to have recovered the funds from DuPont but we have already determined ITT has no such independent right.

The court in *Cambria* seeks to limit the exclusion of preference recoveries from pre-petition security interests only to security interests perfected within 90 days of the filing of the bankruptcy petition. *Supra* 51 B.R. 983. This interpretation of § 552(b) does not commend itself as reasonable because it neuters the section since security interests perfected within 90 days of the commencement of the bankruptcy case can already be avoided as a preference under another section of the Bankruptcy Code. 11 U.S.C. § 547. Congress, would not have enacted § 552(b) with its express exclusion of § 547 recoveries unless it so intended. It is a maxim of statutory construction that if possible, all sections are to be given effect in a consistent manner. "... it is not the responsibility or function of this court to perform linguistic gymnastics in order to upset the plain language of

Congress as it exists today." *State of Alabama v. Marshall*, 626 F.2d 366, 369 (5th Cir.1980); *U.S. v. Charles George Trucking Co.*, 823 F.2d 685 (1st Cir.1987).

The *Cambria* interpretation of Section 552(b) also ignores the unique nature of preferences. The trustee alone, on behalf of creditors, collectively, can recover payments made as preferential transfers, *In re Integrated Testing Products Corporation*, 69 B.R. 901, 904 (D.N.J.1987); *Louisiana State School Lunch Employees Retirement System v. Legel, Braswell, Goot Securities Corporation*, 699 F.2d 512, 515 (11th Cir.1983). Consequently, a preference cannot be voided until a trustee takes affirmative steps to set aside a preferential transfer. *Federal Deposit Insurance Corporation v. Davis*, 733 F.2d 1083 (4th Cir. 1984). To allow a secured creditor to claim preference recoveries as proceeds of pre-petition collateral is to ignore the basic bankruptcy principle that:

In the exercise of his avoiding powers, the bankruptcy trustee acts in a representative capacity on behalf of all creditors, not for the benefit of a single creditor. *See, In re Sweetwater*, 55 B.R. 724, 734 (D.Utah 1985); *Merrill v. Abbott*, *supra*, 41 B.R. [985] at 999 [Bankr.D.Utah 1984]. Moreover, under Section 551 of the Code, transfers avoided under Section 547 are preserved for the benefit of the estate as a whole. *See, C & C Company v. Seattle First National Bank (In re Coal–X Ltd. "76")*, 60 B.R. 907, at 909–12 (Bankr. D.Utah 1986). If plaintiff's theory of this case were correct, Section 551 would be stripped of its plain meaning, the policy of equality among creditors which lies at the heart of Section 547(b) would have to be discarded, and, conceivably, an individ-

---

**2.** 11 U.S.C. § 552(a). Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) *Except as provided* in sections 363, 506(c), 522, 544, 545, *547*, and 548 of this title, if the debtor an entity entered into a security agreement before the commencement of the case and if the security interest created by such security

agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (emphasis added)

ual creditor would compel the bankruptcy trustee to exercise his statutory avoiding powers for the sole and exclusive benefit of that creditor.

*In re First Capital Mortgage,* 60 B.R. 915, 919 (Bankr.D.Utah 1986). ITT's security interest does not extend to this preference recovery.

In light of the Court's findings and rulings, it is unnecessary to deal with the question of tracing.

Finally, ITT raises a question as to the trustee's initial right to recover the preference. If ITT has any standing to raise the issue, the time for doing so has passed.[3] The trustee's right to recover a preference was a matter hard fought by DuPont and the state court receiver in this Court, the District Court, and the Court of Appeals, it is now foreclosed.

Plaintiff's Motion for Partial Summary Judgment is denied. Defendant's Motion for Summary Judgment is allowed.

ITT has no security interest in the trustee's preference recovery.

---

3. This Court has now determined that ITT could not recover directly from DuPont and, therefore, is not a party with a direct or indirect pecuniary interest in that issue. *Canez v. Guerrero,* 707 F.2d 443 (9th Cir.1983). The Court also notes that ITT has, instead of intervening, lain quietly in waiting over two years for the trustee to bear the burden of costs and effort and only after his success, entered the fray.