In re SUN ISLAND FOODS, d/b/a Emerald of Hawaii, Debtor.

James HENNESSY and Hazel A. Hennessy, Plaintiffs,

v.

Richard M. KENNEDY, as Trustee of Sun Island Foods, Inc., Defendant.

Bankruptcy No. 87–00663.
Adv. No. 90–0090.

United States Bankruptcy Court,
D. Hawaii.

March 18, 1991.

Ted Pettit and James Wagner, Honolulu, Hawaii, for plaintiffs.

Richard Kennedy, pro se.

## ORDER DENYING MOTION FOR APPROVAL OF SETTLEMENT AND MUTUAL RELEASE AND MOTION FOR SUMMARY JUDGMENT

JON J. CHINEN, Bankruptcy Judge.

On December 6, 1990, Plaintiff filed a Motion for Summary Judgment and on December 11, 1990, a Motion for Approval of Settlement and Mutual Release. Creditor Union Fish Co. filed a Memorandum in Opposition to Motion for Approval of Settlement Agreement and Mutual Release. Hearings were held on February 6 and February 8, 1991, at which time the Court took the matters under advisement. The Court, being advised in the premises, now renders this memorandum decision and order.

The basic facts are not disputed:

On August 13, 1987, Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. On June 2, 1989, the case was converted to a proceeding under Chapter 7 of the Bankruptcy Code, and Richard M. Kennedy was appointed Trustee in the Chapter 7 proceeding.

Plaintiffs were guarantors on a series of loan transactions in which Debtor obtained lines of credit from Liberty Bank. These loans were secured by a security interest in the Debtor's equipment, inventory, receivables and other personal property and all of the proceeds of the foregoing. The loans were incurred in varying amounts in 1986 and 1987, prior to Debtor's filing of its petition. At the time that this petition was filed, the loans had not been fully paid.

Liberty Bank timely filed herein its Proof of Claim against Debtor as primary obligor. Liberty Bank, however, pursued the Plaintiffs for payment in their capacity as guarantors of the loan obligations. On January 31, 1990, Plaintiffs satisfied in full Debtor's obligations to Liberty Bank and received an Unconditional Assignment of Liberty Bank's claim in these proceedings. Notice of Filing of Evidence of Transfer of Claim Pursuant to Bankruptcy Rule 3001(e)(2) was filed in these proceedings on February 28, 1990.

Prior to the filing of this petition, and within ninety days of bankruptcy, Debtor was insolvent and at all times had a negative cash balance in its accounts. Debtor made payments to its vendors from monies received from the sale of inventory or sale of equipment.

Under the loan documents and Security Agreements executed between Debtor and Liberty Bank, Liberty Bank's security interest attached to the proceeds of the sale of all inventory, equipment and other personal property.

The Plaintiffs allege that the amounts paid to Debtor's vendors were actually amounts which were directly traceable as proceeds from the sale of inventory or equipment and, thus, were subject to the Security Agreement between Liberty Bank and Debtor.

After this petition was filed, preference actions were brought to recover the monies paid within ninety days of the filing. The monies so recovered is presently held by the Trustee.

Plaintiffs, by virtue of their status as subrogee of Liberty Bank, claim to have a valid and enforceable security interest in the amounts recovered on the preference actions from Debtor's vendors, claiming that the money recovered is directly traceable as proceeds from the sale of inventory and equipment which were covered by Liberty Bank's blanket Security Agreement.

This complaint was filed to recognize Plaintiffs as subrogees of Liberty Bank's secured status as a claimant in these bankruptcy proceedings, an order finding Plaintiffs as holders of a secured lien in the amount of Liberty Bank's claim, and an order directing payment be made to Plaintiffs as secured creditors.

The settlement as entered into by the Plaintiffs and the Trustee essentially provides that the Trustee will be paid his trustee's fees based upon the amount collected, and the balance to be paid to the Plaintiffs in partial satisfaction of their claim. No other creditor will receive any of the monies herein.

Hawaii Revised Statutes ("H.R.S.") 490:9–306 provide in pertinent part:

(1) *"Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds.* Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. *Money, checks, deposit accounts, and the like are "cash proceeds".* All other proceeds are "noncash proceeds".

(2) Except where this Article otherwise provides, *a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.*

. . . .

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest *only* in the following proceeds

(a) In identifiable noncash proceeds and in separate deposit accounts containing only proceeds;

(b) In identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) In identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) In all cash and deposit accounts of the debtor, in which proceeds have been commingled but the perfected security interest under this paragraph (d) is

(i) Subject to any right to set-off; and

(ii) Limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days

before the institution of the insolvency proceedings less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4). (Emphasis added.)

The Official Comments to H.R.S. 490:9-306 states in part:

(c) Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party.

3. In most cases when a debtor makes an *unauthorized* disposition of collateral, the security interest, under prior law and under this Article, continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion. Subsection (2) codifies this rule. The secured party may claim both proceeds and collateral, but may of course have only one satisfaction.

*In many cases a purchaser or other transferee of collateral will take free of a security interest: in such cases the secured party's only right will be to proceeds. The transferee will take free whenever the disposition was authorized; the authorization may be contained in the security agreement or otherwise given.* The right to proceeds, either under the rules of this section or under specific mention thereof in a secur-

ity agreement or financing statement does not in itself constitute an authorization of sale. (Emphasis added.)

▉ It is well settled that a Trustee's right to pursue a preference action does not become collateral to any party's security interest. *See e.g. In re Integrated Testing Products Corp.,* 69 B.R. 901 (D.N.J. 1987). The reason is that a trustee's right to recover preferences cannot be assigned to another entity. *See e.g., Louisiana State School Lunch Employment Retirement System v. Legel, Braswell Gov't Securities Corp.,* 699 F.2d 512 (11th Cir. 1983). As such, the right to pursue a preference action cannot be collateral for a security interest. Clearly, a creditor cannot compel a trustee to pursue a preference action, unless the trustee has unjustifiably failed to commence an avoidance action. *See e.g. In re Amarex, Inc.,* 36 B.R. 59 (Bankr.W.D.Okla.1984).

▉ In contrast, however, are the recoveries themselves from a preference action. There appears to be split of authority in this matter. One view is that the recoveries themselves can be subject to a secured creditors security interest. *See e.g. In re Figearo,* 79 B.R. 914 (Bankr.Nev.1987). Other courts have held recoveries cannot be subject to a security interest. *See e.g. In re Integrated Testing Products Corp.,* 69 B.R. 901 (D.C.N.J.1987).

11 U.S.C. § 552 provides:

§ 552. Postpetition effect of security interest.

(a) Except as provided in subsection (b) of this section, *property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.*

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the

debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

■ Subsection (a) provides that pre-petition security interests do not extend to property acquired by the estate after the filing of the petition in bankruptcy. Subsection (b), however, validates certain pre-petition security interests in post-petition property "if the collateral which produces the proceeds was 'acquired' by the debtor *prior* to the commencement of the case." *Matter of Gross–Feibel Co., Inc.*, 21 B.R. 648 (Bankr.Ohio 1982) (emphasis added).

In this case, the preference actions are solely a result of this petition in bankruptcy having been filed. Absent this petition in bankruptcy, there would have been no recoveries. As noted in *In re Integrated Testing Products Corp.*, 69 B.R. 901, (D.N.J.1987):

[T]he right to recover preferences clearly attaches only post-petition, and even then the right is vested exclusively in the trustee; the debtor cannot assign this right. Thus, since the debtor never possessed the right to institute a preference action, the appellant could not have " 'acquired' the [right] prior to the filing of the petition" as required by section 552, and consequently the appellant can have no security interest in the funds recovered in the preference action.

Additionally, it makes little sense to allow the appellant to recover from the trustee what it could not have received from the debtor absent the preference action. In other words, since the debtor could not have recovered the funds it paid to its other creditors, it should not be able to assign this right to the appellant.

And, as noted in *In re Ludford Fruit Products, Inc.*, 99 B.R. 18, 25 (Bankr.Cal. 1989):

Juice Farms has failed to cite any persuasive authority that provides that the "general intangibles" at issue here—the bankruptcy estate's right to recover preferences under 11 U.S.C. § 547—are the proceeds of Juice Farms' pre-petition collateral. *Logically, it is difficult to understand how an avoidance power action that springs into being with the commencement of a bankruptcy case could be the proceed of any form of collateral.*

California Commercial Code § 9306(1) defines "proceeds" to mean "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." *The bankruptcy estate's right to sue under 11 U.S.C. § 547 is not received by the bankruptcy estate in exchange for the transfer of any property.* Rather, it is a special power Congress grants to the fiduciary in charge of a bankruptcy estate, trustee or debtor in possession, to implement the equal distribution of assets among the various classes of claims in the estate.

To conclude that preference actions are the proceeds of collateral held pursuant to a pre-petition security interest would not only violate logic but also the policy behind the avoidance powers.

Indeed, it is illogical to allow a secured creditor to attach the proceeds of recoveries, while at the same time preventing it from compelling a trustee to pursue a preference action. If the trustee herein had not pursued the preference actions, the secured creditor could not have sued on its own to recover the preferences. Yet, by the Trustee having pursued the recoveries, the Plaintiff argues that the secured creditor now is in a position to claim the proceeds as covered by their security interest. This is an anomaly, and it results in the use of powers created by the Bankruptcy Code for the benefit of one creditor alone, and is to be avoided. *See e.g. In re Interstate Motor Freight Systems*, 86 B.R. 500 (Bankr.Mich.1988).

Plaintiffs cite *In re Figearo*, 79 B.R. 914 (Bankr.Nevada 1987) in support of their motions herein. However, in that case, the transfer was fraudulent, and therefore the secured creditor had an independent right to recover the merchandise transferred to the third party. *See also In re Mid–Atlantic Piping Products of Charlotte*, 24 B.R. 314 (Bankr.N.C.1982) (inventory transferred to third party in satisfaction of debt still subject to secured party's security interest); *In re Lively*, 74 B.R. 238 (D.C.Ga. 1987) (trustee's recovery on a fraudulent claims conveyance action subject to prepetition judgment lien creditors.)

In all of the cases noted above, the secured parties had a right independent of the bankruptcy action to recover the monies and/or property transferred. Plaintiffs allege, without any support, that they too have a right to pursue the third party vendors to recover payments made to them prior to the filing of this petition, stating "it is obvious that under Hawaii State law, Liberty Bank could have brought a cause of action against the various third parties who were paid because the payment of the proceeds from the inventory to third parties occurred while the [Debtor] was insolvent."

In this case, the payments to vendors were from sale of inventory and equipment. At most, however, Liberty Bank's blanket lien in the proceeds continued only if the disposition was unauthorized. As noted earlier, the official comments to Uniform Commercial Code Section 9–306 states that, where cash proceeds covered by a security interest are placed into the Debtor's checking account and then paid out in the operation of the Debtor's business, recipients of the funds takes clear of any claim which the secured party may have in them as proceeds, assuming that these payments were in the ordinary course of the business.

■ Although it is clear that a security interest in property may continue notwithstanding sale, exchange, or other disposition of property, the proceeds must be identifiable. It may be that, when the Debtor paid the monies to the vendors they were identifiable; however, these funds ceased to be identifiable once the vendors deposited the funds in their own accounts. In addition, the Uniform Commercial Code provides that a security interest in proceeds will terminate if the disposition was authorized by the secured creditor. Such consent to disposition can be implied depending on the circumstances of the parties, the course of dealings between the parties, and customary practice in the trade. Otherwise, we would have a tangled web of claims by secured parties against purchasers of the Debtor's inventory.

Plaintiffs also ignore that these payments may be considered security for the third party vendors. For example, to the third party vendors, the amounts owed by the Debtor to them were accounts receivable, and thus likely to be covered by the vendor's secured creditors security interest. In such circumstances, the priorities among conflicting security interests is governed by U.C.C. § 9–312.

On a motion for summary judgment, the moving party has the burden of proving that there is an absence of any material issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The judge must view the evidence in the light most favorable to the non-moving party. *T.W. Electric v. Pacific Electric Contractors*, 809 F.2d 626 (9th Cir. 1987). An attorney's affidavit not based on personal knowledge but merely stating what he believes is not sufficient to meet the requirements of FRCP 56(e). *Local Union No. 490 v. Kirkhill Rubber Co.*, 367 F.2d 956 (9th Cir.1966). The Court finds that Plaintiffs have failed to carry their burden.

■ The decision on whether to approve a Settlement and Mutual Release is left to the sound discretion of the Court. As noted in *In re Hallet*, 33 B.R. 564, 565, 566 (Bankr.Maine 1983):

The Court should approve a compromise after considering all factors involved, only if it is in the best interests of the estate. *In re Hass Davis Packing Co.*, 2 B.C.D. 167, 168 (S.D.Ala.1975).

The parties proposing the compromise have the burden of persuading the court that the compromise should be approved. *In re W.T. Grant Company,* 4 B.R. 53, 80 (Bkrtcy.S.D.N.Y.1980) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 464 (2nd Cir.1974). Factors to be considered by the Court include "the probability of success of the litigation, the difficulties of discovery, the complexity, expense, and delay incurred by the litigation, and the paramount interest of the creditors." (Citations omitted.) Moreover, while creditors' objections are not controlling, *Fogg v. Sherman Homes, Inc. (In re Sherman Homes, Inc.),* 28 B.R. [176] at 178 [ (Bkrtcy.D.Me.1983) ], emphasis is placed on the paramount interests of creditors and proper deference will be given to the reasonable views put forth in their objections. *In re Lloyd, Carr and Company,* 617 F.2d 882, 891 (1st Cir.1980).

In this case, the settlement provides that, after payment of the trustee's commission, the balance of the funds will be paid to the Plaintiffs. No other creditor will be paid. As noted above, however, it is doubtful that the Plaintiffs will succeed in their claim that Liberty Bank had a security interest in the proceeds of the preference recoveries. The Settlement is not to be in the best interest of the estate.

Based on the above,

IT IS HEREBY ORDERED that the Motion for Summary Judgment is hereby denied.

IT IS FURTHER ORDERED that the Motion for Approval of Settlement Agreement and Mutual Release is hereby denied.