### In re TEK–AIDS INDUSTRIES, INC., Debtor.

### Bankruptcy No. 90 B 18325.

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 21, 1992.

---

Michael Weissman, McBride, Baker & Coles, Chicago, Ill., for Midwest Bank.

David E. Cohen, Cohen & Krol, Chicago, Ill., for trustee.

Myron E. Siegel, Siegel, Lynn & Capitel, Northbrook, Ill., for debtor.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on the Motion of First Midwest Bank for turnover of certain funds by the Chapter 7 trustee.[1] For the reasons stated below, this court holds that the Bank does not have a security interest in the funds at issue, moneys collected by the trustee in preference actions.[2] Therefore, the Bank's motion must be denied.

### FACTS

On June 20, 1989, Tek–Aids Industries entered into a Loan and Security Agreement with the Bank. Under the terms and conditions of the agreement, the Bank became the exclusive source of working capital financing for the ongoing business operations of the Debtor. The Debtor granted the Bank a first priority security interest in the accounts, inventory, machinery and equipment, general intangibles, and all other personal property and proceeds of the Debtor. The Bank's security interest was properly perfected.

On October 5, 1990, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. No trustee was appointed at the outset of the Chapter 11 proceeding. Instead, the Debtor continued to operate its business as a debtor in possession.

On October 15, 1990, the Debtor filed an Emergency Motion for the Use of Cash Collateral with this court. That motion went out on notice on October 11, 1990 to those of the Debtor's creditors who had requested notice. The motion asked the Court to enter an order allowing the Debtor to use the cash collateral of the Bank in return for, inter alia, a security interest in the Debtor's postpetition accounts receivable and inventory.

The court approved the Debtor's Emergency Motion on October 24, 1990 and requested a draft interim order from the parties. A Draft Interim Cash Collateral Order was presented to and signed by the court. That draft order granted the Bank not only the security interest requested in the Debtor's motion, but in addition granted the Bank a security interest in "all postpetition ... equipment and other personal property (including general intangibles)." No such relief had been requested in the Debtor's motion. The court was not aware of the inconsistency between the Debtor's motion and the Draft Interim Cash Collateral Order when it signed the Draft Interim Cash Collateral Order. Thereafter, the Draft Interim Cash Collateral Order was renewed twice. No motion extending the Draft Interim Cash Collateral Order sought a lien on the Debtor's postpetition personal property and general intangibles. No final cash collateral order was ever entered.

The attempted reorganization failed and on December 12, 1990, the Chapter 11 case was converted to a Chapter 7 case. The U.S. trustee appointed Joseph Cohen as interim trustee. Cohen became the permanent trustee when the creditors failed to elect a trustee at the creditors meeting. See § 702(d).

During the pendency of the bankruptcy proceeding, the Trustee collected approximately $45,000 from creditors of the Debtor who had received preferential payments under § 547(b). The Bank now claims the right to these monies under both its prepetition security agreement with the Debtor and the Draft Interim Cash Collateral Orders.

### JURISDICTION AND PROCEDURE

The court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b) as a mat-

---

**1.** Although the Bank's motion was termed a turnover motion, it was in reality a motion for the disposition of collateral under § 725. A proceeding to recover money or property under § 725 gives rise to a contested matter under Fed.R.Bankr.P. 9014.

**2.** An adversary proceeding is not required. See Fed.R.Bankr.P. 7001(1).

ter arising, inter alia, under 11 U.S.C. §§ 363 and 552 and Fed.R.Bankr.P. 4001(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) as a matter involving the validity and extent of a lien and under 28 U.S.C. § 157(b)(2)(B) as a matter involving the allowance of a claim. The matter is before the court under Local Rule 2.33 of the United States District Court for the Northern District of Illinois, automatically referring bankruptcy matters to this court for hearing and determination.

## DISCUSSION

The Bank claims the right to monies recovered by the Trustee under both its prepetition security interest and the Draft Interim Cash Collateral Orders.

### I. *Prepetition Security Interest*

■ Section 552(a) provides that, as a general rule, property acquired by the estate or by the debtor postpetition is not subject to a prepetition lien. Section 552(b) provides an exception to this general rule. Section 552(b) allows prepetition security interests to attach to post-petition property if the collateral which produces the proceeds was acquired by the debtor prior to the commencement of the case.

The Bank argues that the estate's preference actions actually were part of its prepetition collateral, and thus that the monies recovered from those suits were the proceeds of property "acquired" before the commencement of the case. Thus, the Bank's theory goes, the Bank's prepetition security interest covers the monies recovered by the Trustee in the preference actions under § 552(b).

The Bank's argument is flawed. The estate's causes of action for the preferences did *not* exist before the filing of the Chapter 11 petition. If the Debtor had never filed bankruptcy, none of the preference actions could ever have been brought by anybody. Since it was the filing of the Chapter 11 petition that gave birth to the existence of the causes of action to recover preferences, and since this case was "commenced" by the voluntary Chapter 11 peti-

tion, *see* § 301, it is obvious that the preference actions could not be part of the "property of the estate acquired *before* the commencement of the case." § 552(b) (emphasis added). *See In re Sun Island Foods,* 125 B.R. 615, 619 (Bankr.D.Hawaii 1991); *In re Integrated Testing Products Corp.,* 69 B.R. 901, 905 (D.N.J.1987). *But see In re Enserv Company, Inc.,* 64 B.R. 519, 521 (9th Cir. BAP 1986); *In re Cambria Clover Mercantile Co., Inc.,* 51 B.R. 983, 985 (Bankr.E.D.Pa.1985); *In re Mid–Atlantic Piping Products of Charlotte, Inc.,* 24 B.R. 314, 325 (Bankr.W.D.N.C.1982).

The fact that the trustee's ability to recover a given transfer as a preference depends on prepetition actions is irrelevant. A preference action can only be initiated in the context of a bankruptcy case after the filing of a bankruptcy case. Even if all of the elements spelled out by § 547(b) are present, no one can recover the preferential transfer as preferential unless some voluntary or involuntary bankruptcy petition is filed. *See* §§ 301, 303.

Indeed, to rule otherwise would give *every* secured creditor with a properly perfected security interest in all of the Debtor's personal property a lien on recoveries by the Trustee in preference actions. This would not only defy logic, but would undermine the policy behind the avoidance powers as well. *See In re Ludford Fruit Products, Inc.,* 99 B.R. 18, 25 (Bankr. C.D.Cal.1989). The estate's right to sue under § 547 is a special power Congress grants to the fiduciary in charge of the estate to implement the policy underlying the Code of fair and equal treatment of creditors. *Sun Island,* 125 B.R. at 619; *Ludford,* 99 B.R. at 25. Allowing a prepetition blanket security interest to reach preference actions would be tantamount to giving a creditor additional collateral it would not have had if the debtor had not filed a bankruptcy petition or had a petition filed against it. Such a windfall contradicts any notion of fair and equal treatment among creditors.[3]

---

**3.** Moreover, if the Bank's theory were correct, the transfer to the Bank of a security interest in

the preference actions would *itself* be preferential. If the right to sue for a preference does

Consequently, this court rules that the Trustee's right to recover for the preferential transfers did not arise prepetition. Thus, the proceeds derived from the preference actions are not subject to the Bank's prepetition security interest.

## II. *Security Interest Under Draft Interim Cash Collateral Orders*

The Bank argues that even if the preference proceeds were not subject to its prepetition lien, it should prevail, because the preference recoveries are part of the collateral given to it by the Draft Interim Cash Collateral Orders.

The Draft Interim Cash Collateral Orders give the Bank a lien on "all postpetition accounts receivable, inventory, equipment and other personal property (including general intangibles)." Under Ill. Rev.Stat. ch. 26, § 9–306, the Bank's security interest would extend to the proceeds of the Bank's collateral as well. The Bank apparently takes the position that the estate's rights to bring preference actions are general intangibles, the monies the Trustee has recovered from the preference actions are the proceeds of those general intangibles, and therefore the Draft Interim Cash Collateral Orders give the Bank a security interest in the preference monies.

### A. Due process considerations

■ Whether the estate's right to sue for a preference is a general intangible is an interesting question, but one which the court does not have to address. Rather, due process considerations prevent the Bank from prevailing under the Draft Interim Cash Collateral Orders.

Under Fed.R.Bankr.P. 4001(b), any motion of the Debtor or Bank dealing with the use of cash collateral may only be granted on notice to a creditors' committee, if a creditors' committee has been appointed under § 1102. If no creditors' committee has been appointed, the party seeking to

have a cash collateral order entered must serve the debtor, the U.S. Trustee, the debtor's twenty largest noninsider unsecured creditors, and others claiming a lien in the cash collateral. *See* Fed.R.Bankr.P. 1007(d); 4001(b). If the cash collateral is to be used pursuant to an agreed order between the debtor and the entity claiming an interest in the cash collateral, further notice requirements exist. *See* Fed. R.Bankr.P. 4001(d). Although the instant cash collateral order appears to have been agreed upon by the Debtor and the Bank, there is no evidence that the notice requirements of either Rule 4001(b) or Rule 4001(d) was satisfied. Certainly, the record nowhere suggests that the Bank would be given a security interest in assets of the Debtor beyond those sought in the motion before the court. This notice defect alone is enough to sink the Bank's claim to a lien in the Debtor's postpetition personalty, including general intangibles. U.S. Const. Amends. V and XIV. *See In re Edwards*, 962 F.2d 641, 645 (7th Cir.1992).

Here, the Debtor mailed notice to the relevant parties on October 11, 1990. That notice, however, stated *only* that the Bank was seeking a security interest in the Debtor's new accounts receivable and inventory in return for the use of its cash collateral. Consequently, the Draft Interim Cash Collateral Orders are void as against due process to the extent they grant the Bank a security interest in anything other than postpetition accounts receivable or inventory. The Draft Interim Cash Collateral Orders cannot give the Bank a lien on the Debtor's postpetition general intangibles when the motion failed to request such relief. Since any claimed lien on the preference monies is based on the theory that such monies are proceeds of a general intangible of the estate, the estate's right to sue on the preference actions, the Draft

---

arise prepetition, the Bank's security interest in the preference actions would necessarily arise within the § 547(b) preference period. This is because, under § 547(e), a transfer cannot arise until the debtor has rights in the collateral, and the Debtor would have no rights in the collateral, the preference actions, until after the preferences occurred (which obviously is within the

preference period). Thus, because all of the other elements of a preference would be met with respect to the transfer of the security interest in the preference actions, *see* § 547(b), the transfer of the security interest in the preference actions would itself be a preference. This court finds it impossible to believe that Congress could have intended such an absurd result.

Interim Cash Collateral Orders cannot give the Bank a lien on the proceeds of the preference actions.

■ The Bank takes the position that it is too late to raise any notice issue. The Bank identifies no legal theory on which it bases its argument. This court sees only two potential bases for the Bank's position: (1) the Federal Rules of Civil Procedure; and (2) § 363(m).[4]

## B. The Federal Rules of Civil Procedure

■ The Federal Rules of Civil Procedure generally limit the ability of a court to alter or amend its judgments to the ten day period following entry of the judgment. Fed.R.Civ.P. 59(e); Fed.R.Bankr.P. 9023 (applying Rule 59(e) to bankruptcy cases). However, Fed.R.Civ.P. 60(b), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9024, does allow a bankruptcy court to grant relief from certain judgments within either a fixed one year time limit or a "reasonable" time period. One reason for the court to grant relief from a judgment is that the judgment is void. Relief from a judgment that is void is not subject to the one year time limit. Instead, it is to be brought within a reasonable time.

A judgment entered in violation of due process is clearly void under Rule 60(b)(4). *Simer v. Rios*, 661 F.2d 655, 663 (7th Cir. 1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). It is "reasonable" to allow relief from a void judgment at any time, since the judgment is legally ineffective. *In re Edwards*, 962 F.2d 641, 644 (7th Cir.1992); *United States v. Sotis*, 131 F.2d 783, 787 (7th Cir.1942). *See also* 7 James W. Moore et al, MOORE'S FEDER-

AL PRACTICE ¶ 60.25[4], at 241 (2d ed. 1992) (laches cannot cure a judgment that is so defective as to be void).

Here, the Draft Interim Cash Collateral Orders were entered without proper notice to affected creditors and thus are in violation of the due process rights of those creditors. Consequently, they are void and may be vacated by this court under Rule 60(b)(4) at any time. Thus, this court's decision to void the Draft Interim Cash Collateral Orders insofar as they grant the Bank liens beyond those sought in the motion is consistent with the Federal Rules of Bankruptcy Procedure.[5]

## C. § 363(m)

■ Section 363(m) provides that the reversal or modification on appeal of an authorization of the sale or lease of property does not affect the validity of that sale or lease under such authorization to an entity that purchased the property in good faith. In *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir.1990), the Seventh Circuit stated in dicta that, although § 363(m) speaks only of modification on appeal,

> § 363(m) ... disable[s] courts from backtracking on promises in the absence of bad faith ... [because] a bankruptcy court's modifications of its own orders poses the same risks as does reversal on appeal.

However, this court does not believe that, even if the *Kham and Nate's* dicta were the law of this circuit, it would apply in this case. The Debtor and the Bank ignored the due process rights of the other creditors. The Seventh Circuit's dicta in

---

**4.** It should be noted that the doctrine of "law of the case" is inapplicable here, since that doctrine is inapplicable in cases involving "plain error or injustice." 1B James W. Moore et al, MOORE'S FEDERAL PRACTICE ¶ 0.404[1], at 124 (2d ed. 1992). *See Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir.1988) (law of the case does not apply where prior decision is clearly erroneous; to be clearly erroneous, must prior decision must strike the court as wrong with the "force of a five-week-old unrefrigerated dead fish").

**5.** The Seventh Circuit has indicated in several cases that Rule 60(b) applies only to final judg-

ments. *See, e.g., Kham & Nate's Shoes No. 2 v. First Bank,* 908 F.2d 1351, 1355 (7th Cir.1990); *Kapco Mfg. Co. v. C & O Enterprises, Inc.,* 773 F.2d 151, 153–154 (7th Cir.1985). The Draft Interim Cash Collateral Orders are final orders. Each order fixed rights and determined liens for a discrete period of time. This court nor the parties never had any intention to revisit the rights and liens granted by the Draft Interim Cash Collateral Orders. *Cf. Matter of Met–L–Wood Corp.,* 861 F.2d 1012, 1016 (7th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989) (order confirming judicial sale of property of debtor's estate a final order).

*Kham and Nate's* could not possibly apply to orders which are constitutionally void.[6] Consequently, this court's decision is not inconsistent with § 363(m).[7]

The court thus holds that the Bank's security interest under the Draft Interim Cash Collateral Orders does not cover the preference recoveries.

## CONCLUSION

For the reasons stated above, the court holds that the Bank does not have a security interest in the preference recoveries. The Bank's motion is denied.

IT IS HEREBY ORDERED that First Midwest Bank's Motion for Turnover of Funds is DENIED.

---

**6.** In addition, even if the spirit of § 363(m) governs this court, § 363(m) is irrelevant in the instant dispute. § 363(m) deals only with a sale or lease of property. Here, cash collateral was neither sold nor leased. It was used. *See* § 363(c)(2). Use is clearly a concept independent of lease or sale under § 363.

**7.** It should be noted that the instant case is readily distinguishable from the Seventh Circuit's recent decision *In re Edwards*, 962 F.2d 641 (7th Cir.1992). In that case, the court refused to vacate a void order approving a § 363(m) sale. However, the court's decision was largely premised on the policy of protecting bona fide purchasers in sales of collateral. That policy plays no part here, since no sale was involved.