WHIRLPOOL CORPORATION,
a Delaware corporation,
Plaintiff,

v.

CIT GROUP/BUSINESS CREDIT, INC.,
a New York corporation; CGBN, Inc.,
a Hawaii corporation; Michael Clifford; Edwin Bowling; Frances Haller–Bowling; Raymond Iwamoto;
Kurt Glassman; Does Individuals 1–50; Doe Partnerships, Corporations or
Other Entities 1–20, Defendants,

and

CG Development, Inc., F & J Movers,
and Renee K. Costa, Additional
Crossclaim Defendants.

No. CV 01–00187 DAE–BMK.

United States District Court,
D. Hawai'i.

April 15, 2003.

Timothy J. Hogan, Lynch Ichida Thompson Kim & Hirota, Honolulu, HI, for Whirlpool Corp.

Paul Alston, Louise K.Y. Ing, Lea O. Hong, Alston Hunt Floyd & Ing, Robert E. Badger, Jr., Ted N. Pettit, Roger S. Moseley, Christopher J. Muzzi, Case Bigelow & Lombardi, Margery S. Bronster, Office of the Attorney General–Hawaii, Nathan C. Lampard, Case Bigelow & Lombardi, Margery S. Bronster, Hilary Benson Gangnes, Jeannette E. Holmes, Bronster Crabtree & Hoshibata, Calvin E. Young, John S. Nishimoto, Steven L. Goto, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, for Cit Group/Business Credit, Inc., CGBN, Inc., Michael Clifford, Edwin Bowling, Frances Haller–Bowling, Raymond Iwamoto, Doe Individuals 1–50, Doe Partnerships, Corporation and/or other Entities 1–20, Kurt Glassman, defendants.

*ORDER AFFIRMING MAGISTRATE ORDER GRANTING IN PART AND DENYING IN PART CIT GROUP/BUSINESS CREDIT, INC.'S MOTION FOR LEAVE TO AMEND ITS FIRST AMENDED CROSS–CLAIM*

DAVID ALAN EZRA, Chief Judge.

Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing. After reviewing Defendant/Cross–Claimant THE CIT GROUP/BUSINESS CREDIT, INC.'s ("Defendant CIT GROUP") Appeal and the supporting and opposing memoranda, the court AFFIRMS the Magistrate Order Granting in Part and Denying in Part CIT GROUP/BUSINESS CREDIT, INC.'s Motion for Leave to Amend its First Amended Cross–Claim, filed January 21, 2003 ("Order").

## BACKGROUND

In his January 21, 2003 Order, Magistrate Judge Barry M. Kurren ("Judge Kurren") allowed Defendant CIT GROUP to file a Second Amended Cross–Claim against Defendants Bowling and Haller–Bowling. Defendant CIT GROUP had argued that the existence of new allegations gave Defendant CIT GROUP standing to bring a fraud conspiracy and a fraudulent transfer claim against Defendants Bowling and Haller–Bowling. Judge Kurren allowed Defendant CIT GROUP to pursue a fraud conspiracy claim but he denied Defendant CIT GROUP the right to pursue a fraudulent transfer claim. He found that a previous order issued by this court had determined that Defendants Bowling and Haller–Bowling would not be prejudiced by the fraud conspiracy claim because the allegations supporting the claim were already set forth in the First Amended Cross–Claim. *See* Order Denying Defendant Frances Haller–Bowling's Motion for Judgment on the Pleadings As to Plaintiff

Whirlpool's Second Amended Complaint and Granting In Part and Denying In Part Defendant Frances Haller–Bowling's Motion to Dismiss Defendant CIT GROUP'S CROSS CLAIM, filed October 24, 2002 ("October 24, 2002 Order"). However, Judge Kurren found that the October 24, 2002 Order had barred a fraudulent transfer claim for lack of standing and that Defendant CIT GROUP's new allegations did not alter this conclusion.

Defendant CIT GROUP appeals on the grounds that the Order was clearly erroneous and contrary to law. Specifically, Defendant CIT GROUP argues that it should be allowed to pursue a fraudulent transfer claim with respect to the diversion of collateral in which Defendant CIT GROUP, as MidPac's allegedly senior secured lender, had an allegedly perfected security interest. *See* CIT GROUP's Statement of Appeal ("Appeal"), filed January 31, 2003, at 2. Defendant CIT GROUP argues that it "suffered a discrete and unique interest [sic] when this collateral was fraudulently transferred to MidPac's insiders..." *Id.* On these grounds, it claims it has standing to pursue a fraudulent transfer claim.

Defendants Bowling and Haller–Bowling filed an Opposition to Statement of Appeal from the January 21, 2003 Order Granting In Part and Denying In Part CIT GROUP/BUSINESS CREDIT, INC.'s Motion for Leave to Amend Its First Amended Cross–Claim, Filed on February 14, 2003 ("Opposition"). On February 19, 2003, Defendants Michael Clifford and CGBN, Inc., and Additional Crossclaim Defendant CG Development, Inc. joined in Defendants Bowling and Haller–Bowling's Opposition. Defendant CIT GROUP then filed an Ex Parte Motion for Leave to File Reply in Support of Appeal ("Reply") and this court granted that Motion on February 24, 2003. Defendants Bowling and Haller–Bowling subsequently filed a Mo-

tion to Strike Attached Reply in Support of Appeal on the basis of procedural flaws and alleged noncompliance with Local Rule 74.1. Finally, on March 13, 2003, Defendant CIT GROUP lodged another Ex Parte Motion for Leave to File Supplemental Reply in Support of Appeal from Judge Kurren's Order ("Supplemental Reply").[1] Defendants Bowling and Haller–Bowling filed an Opposition to Defendant CIT GROUP's Supplemental Reply on March 17, 2003. Defendants Bowling and Haller–Bowling also filed a Motion to Strike the Supplemental Reply.

On March 25, 2003, this court denied Defendants Bowling and Haller–Bowling's Motion to Vacate Ex Parte Order Filed on February 24, 2003. The court also denied Defendants Bowling and Haller–Bowling's Motion to Strike Reply Filed on February 24, 2003, and denied their Motion to Strike Reply Filed on March 25, 2003. The court did, however, grant Defendants Bowling and Haller–Bowling's Motion to allow time to respond and set a deadline for April 4, 2003. On April 4, 2003, Defendants Bowling and Haller–Bowling filed their Response to CIT GROUP Business Credit, Inc.'s Reply and Supplemental Reply in Support of Appeal from January 21, 2003 Order ("Response").

### STANDARD OF REVIEW

■ Pursuant to Local Rule 74.1, the district court may only set aside a magistrate judge's order of non-dispositive mat-

ters on appeal if it finds the order to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); LR 74.1. Thus, the district judge must affirm the magistrate judge unless the district judge is left with the "definite and firm conviction that a mistake has been committed." *Burdick v. Commissioner*, 979 F.2d 1369, 1370 (9th Cir.1992). The reviewing court may not simply substitute its judgment for that of the deciding court, as it may under a de novo standard. *See Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir.1991).

### DISCUSSION

In an effort to address the deficiencies in Defendant CIT GROUP's Cross–Claim, which this court identified in its October 24, 2002 Order, Defendant CIT GROUP claims it has five new allegations that justify its request for leave to amend the First Amended Cross–Claim.[2] It states that these allegations are not only new but that they constitute the required showing of particularized injury for this court to find standing. Specifically, Defendant CIT GROUP argues that because it was a secured creditor, it has the right to pursue a claim to recover its collateral. Thus, Defendant CIT GROUP argues that Judge Kurren's ruling that Defendant CIT GROUP lacked standing, even in light of the new allegations, is contrary to law or clearly erroneous.

---

**1.** This Ex Parte Motion was granted and filed on March 25, 2003.

**2.** The new allegations are (1) that $6.5 million in payments were made to Defendants Bowling and Haller–Bowling and other insiders from an account at City Bank in which CIT had a perfected security interest; (2) Defendants Bowling and Haller–Bowling received over $2 million in payments from MidPac accounts in which Defendant CIT GROUP had a perfected security interest; (3) Mid-

Pac's assets were fraudulently inflated specifically to induce Defendant CIT GROUP to make additional cash advances on its secured loan; (4) the City Bank account was misrepresented as being a savings account when it was in fact a checking account used to distribute Defendant CIT GROUP's collateral to Defendants Bowling and Haller–Bowling; and (5) Defendant CIT GROUP had agreements with MidPac that prohibited the transfer of its collateral to insiders for stock purchases.

Defendants Bowling and Haller–Bowling respond first by arguing that these allegations are not new. Rather, they contend that Defendant CIT GROUP has offered nothing to warrant a finding that Defendant CIT GROUP now has standing to pursue a fraudulent transfer claim. Indeed, in preparing the October 24, 2002 Order the court had before it information about the loan agreement between MidPac and Defendant CIT GROUP. *See* October 24, 2002 Order, at 32. It also referred to Defendant CIT GROUP's allegations that Defendants Bowling and Haller–Bowling wrongfully received $1.29 million in furtherance of a scheme to extract money from MidPac accounts. *See* October 24, 2002 Order, at 27. Although the current appeal alleges a slightly higher figure of $2 million, the transactions underlying Defendant CIT GROUP's grounds for asserting a specific, particularized injury are the same.

■ Even if the remaining claims are truly "new," the court finds that Judge Kurren correctly ruled that they do not change this court's finding in not only its October 24, 2002 Order but also its September 17, 2001 Order. In both orders, this court found that a creditor only has standing to pursue its claim where the illegal activity is aimed directly at that specific creditor. October 24, 2002 Order, at 33. The court found that standing exists for Plaintiff Whirlpool because its alleged injury is unique; Plaintiff Whirlpool, not Defendant CIT GROUP, was the specific target of the alleged "bust out." [3] Although Defendant CIT GROUP argues that it was the "principal lender," and

therefore not just "any creditor," the fact that it may have lost substantially more than any creditor does not change this court's previous finding that it nevertheless has not suffered a specifically targeted injury above and beyond the other creditors who suffered losses. Defendant CIT GROUP's self-characterization as a secured creditor who suffered an injury as a result of the allegedly illegal activities conducted by Defendants Bowling and Haller–Bowling does not enable it to allege a specific injury resulting from a fraudulent scheme that is any different from or more unique than other secured creditors. In contrast to Plaintiff Whirlpool, Defendant CIT GROUP cannot allege that Defendants Bowling and Haller–Bowling intended to harm only its financial interests through the allegedly fraudulent transfers of money from various bank accounts. Thus, the court is unpersuaded by Defendant CIT GROUP's argument that because it is entitled to recover at all, it has sustained a specific injury above and beyond that inflicted on other creditors such that it should be allowed to pursue an independent fraudulent transfer claim. Instead, Defendant CIT GROUP has a general claim that is common among all creditors who allegedly lost money as a result of Defendants Bowling and Haller–Bowling's alleged activities.

The court does not dispute that in some cases secured creditors can recover diverted funds by pursuing avoidance claims that are unique to them.[4] It recognizes the holdings and circumstances involved in cases cited by Defendant CIT GROUP, including *In re Speir*, 190 B.R. 657, 661

**3.** See October 24, 2002 Order at 3 for description of a "bust out."

**4.** The court notes that Defendant CIT GROUP's second Ex Parte Motion for Leave to File Supplemental Reply in Support of Appeal ("Supplemental Reply"), filed on

March 25, 2003, confirms that although secured creditors can pursue a "unique kind of avoidance claim," it is within the province of this court to determine if any such claims exist. *See* Transcript of Proceedings before the Hon. Robert J. Faris (2/21/03), at 7:12–24 and 9:4–10.

(Bankr.N.D.Ala.1995) (finding that "[i]f the transfer is a fraudulent transfer, the objecting creditor becomes, under Alabama law, a judgment lien creditor with rights superior to those of the Trustee"). However, the court finds these cases sufficiently distinguishable. For example, the holding in *In re Speir* relied in part upon the Alabama Uniform Fraudulent Transfer Act, which allowed recognition of a claim despite an intervening bankruptcy proceeding.[5] According to this Act, the claim would relate back to the date of a wrongful act and thus no assessment of a lien or judgment was necessary to give the secured creditor standing. The court in *In re Speir* found that a bankruptcy trustee could not "stand in the shoes of a secured creditor attempting to set aside a fraudulent transfer," because such creditor had an independent right to the property. *Id.* at 663.

The *In re Speir* court specifically distinguished *In re MortgageAmerica Corporation*, 714 F.2d 1266 (5th Cir.1983), because it did not involve a secured creditor *and* the bankruptcy trustee had interests that could benefit the estates. The court in *In re Speir* found that the bankruptcy trustee had no such interest. *Id.* at 664. The court also reaffirmed that "[w]hile a trustee technically represents all creditors, secured as well as unsecured, a trustee 'primarily represents the unsecured creditors, and represents the secured creditors only in his capacity as a custodian of the property upon which they have a lien.'" *Id.* at 664.[6] Under the particular Alabama state law conferring standing on the secured

creditor, the date giving rise to a creditor's right in Alabama to seek to set aside a fraudulent transfer is the date of the wrongful act that gives rise to those rights. *Id.* at 662. "The right is unaffected by whether the creditor has reduced the claim to judgment...or has established a lien on the property subject to the alleged fraudulent transfer." *Id.* Thus, the court found that in light of Alabama's law: ."A trustee must be allowed to exercise authority to avoid fraudulent transfers. This opinion and order do not modify that authority. But neither can this opinion and order modify the state law rights of this secured creditor." *Id.*

This court also recognizes that the Hawai I Bankruptcy Court's opinion in *In re Sun Island Foods* authorizes a secured creditor to pursue a fraudulent transfer claim because it has an independent right to seek such a recovery. *In re Sun Island Foods*, 125 B.R. 615, 620 (Bk.Haw.1991) (finding that "the transfer was fraudulent, and therefore the secured creditor had an independent right to recover the merchandise transferred to the third party"). In *In re Sun Island Foods*, however, the bankruptcy trustee had already pursued a recovery action and the monies were in the trustee's possession. Plaintiffs were claiming that they had a valid and enforceable security interest in the amounts recovered on the preference actions from the debtor's vendors because the money recovered was directly traceable as proceeds from the sale of inventory and equipment covered by the plaintiffs' blanket Security Agreement. Thus, *In re Sun Island*

---

**5.** *See In re Miller*, 148 B.R. 510, 517 (Bankr. N.D.Ill.1992) ("While federal law determines what constitutes property of the estate, state law determines the debtor's interest in specific property") (citations omitted).

**6.** Defendant CIT GROUP argues that bankruptcy trustees act for the benefit of unsecured creditors and suggests that because it is

a secured creditor, it may proceed independently of the Bankruptcy Trustee. However, the Sixth Circuit case it cites, *In re K.C. Machine Co.*, 816 F.2d 238 (6th Cir.1987) supports the more general proposition that the Bankruptcy Estate must act "in the best interests of the estate and its creditors." *In re K.C. Machine Co.*, 816 F.2d at 241.

*Foods* does not answer the question of whether a secured creditor may pursue an independent fraudulent transfer claim. Rather, it states that once the designated bankruptcy trustee has pursued such an action and actually has recovered monies from the action, a secured creditor has a priority right to those monies. Without a petition in bankruptcy, the court noted that no recovery would have been possible because the right is vested exclusively in the trustee. *Id.* at 619. In this case, the Bankruptcy Trustee did pursue a recovery action. According to the reigning case law, Defendant CIT GROUP's only avenue to obtaining the funds it believes are owed to it is to demonstrate that the property recovered by the estate through the Bankruptcy Trustee's avoiding powers is subject to its allegedly perfected security interest.

Despite this court's recognition that in some states and under certain circumstances a secured creditor independently may pursue a unique and specific avoidance claim, it is not clear that Defendant CIT GROUP has such a claim in this case. Defendants Bowling and Haller–Bowling refer to a letter written by the Bankruptcy Trustee on January 9, 2003, and argue that Defendant CIT GROUP does not acquire the right to recover under a fraudulent transfer theory unless it had actually foreclosed on its perfected secured interest prior to the bankruptcy filing.[7] Otherwise, they argue, Defendant CIT GROUP does not "own" the funds in the manner necessary to assert an independent fraudulent transfer claim.

Defendant CIT GROUP argues in its Reply that in this letter the Bankruptcy Trustee "failed to recognize that CIT is not pursuing proceeds of collateral, it is pursuing funds diverted from an account in which it had a pre-existing perfected interest." Reply, at 4. In their Response, Defendants Bowling and Haller–Bowling address this assertion by referring to the former version of Article 9. *See* Response, at 13. It appears both parties agree that the version of Article 9 in effect at the time Defendant CIT GROUP allegedly perfected its interest contains the relevant provisions for this court to consider. *See* Reply, at 2–3; Response, at 14. According to Defendants Bowling and Haller–Bowling, under the former version, deposit accounts were included in the definition of "proceeds" such that Defendant CIT GROUP's security interest does not cover the funds allegedly diverted from the City Bank account. *See* Haw.Rev.Stat. § 490:9–306(4)(b) and (c) (1999). Moreover, Defendant CIT GROUP does not dispute that it attempts to recover payments transferred before the filing of the MidPac bankruptcy petition. It also does not dispute that pre-petition transfers are property of the MidPac Estate. Although Defendant CIT GROUP argues that these transfers violated its "unique rights" as a creditor and caused "particularized injury," neither its rights nor its injury confer the type of "ownership" in the funds necessary to bring a separate action for pre-petition fraudulent transfers.

---

7. *See In re Speir,* 190 B.R. at 661–662 (recognizing the general proposition regarding standing to bring an independent claim: "The principle is well sustained that in general a creditor of a bankrupt cannot after bankruptcy maintain an action to set aside a fraudulent conveyance made by the bankrupt; and that after the appointment of a trustee, he alone may do so, though the conveyance was executed more than four months before the bankruptcy. But a different rule obtains when the creditor has a lien on the grantor's property created more than four months before bankruptcy (11 U.S.C.A. § 107, sub. f), and his right to set aside the fraudulent conveyance is in furtherance of his enforcement of that lien.)"

Defendant CIT GROUP may have a superior interest with respect to other creditors. It does not, however, have standing to pursue a separate claim, especially in light of the fact that the Bankruptcy Trustee commenced a similar, if not identical action on behalf of all creditors. *See In re Sunshine Precious Metals, Inc.,* 157 B.R. 159, 161 (Bankr.D.Idaho 1993) (finding that "[c]ases denying standing to creditors attempting to recover property of the estate predate not only the Bankruptcy Code, but even the Bankruptcy Act of 1898"). The bankruptcy court in *In re Sunshine Precious Metals, Inc.,* reaffirmed the well-established legal precedent that a single creditor may not maintain an action on his own behalf against a corporation's fiduciaries if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner. *In re Sunshine Precious Metals, Inc.,* 157 B.R. at 162 (citing In *Glenny v. Langdon,* 98 U.S. 20, 25 L.Ed. 43 (1878) (finding that a creditor has no standing to recover a fraudulent transfer by the debtor); *St. Paul Fire and Marine Ins. Co. v. PepsiCo. Inc.,* 884 F.2d 688, 700–02 (2nd Cir.1989) (finding that a guarantor of debtor's bonds did not have standing to bring an independent action in federal court against corporate parent alleged to have stripped the debtor of assets, since the action was property of the estate; the court noted that the trustee and creditors' committee had already commenced a similar action in bankruptcy court); *Barnett v. Stern,* 93 B.R. 962, *968–69* (N.D.Ill.1988), *reversed on other grounds,* 909 F.2d 973 (7th Cir.1990) (finding that creditors who brought action for fraud and RICO against debtor and son for concealing assets did not have standing to sue on their own behalf; trustee was proper party to bring action after debtor filed bankruptcy)).

■ These cases uphold the general proposition that a creditor does not have standing to bring an action that is the well-established right of the Bankruptcy Trustee. Again, as the bankruptcy court in *In re Sunshine Precious Metals, Inc.* found, restrictions on standing are: "supported by the both the language and the purpose of the Bankruptcy Code. Section 541 creates an estate on the filing of bankruptcy, and provides that 'all legal or equitable interests of the debtor in property' become property of the estate. 11 U.S.C. § 541(a)(1). Section 362, in contrast, prevents any entity from obtaining such property of the estate. 11 U.S.C. § 362(a)(3)." *In re Sunshine Precious Metals, Inc.,* 157 B.R., at 163. In this situation, Defendant CIT GROUP has not alleged an injury specific and unique to it. As with the other creditors caught in this unfortunate set of circumstances, Defendant CIT GROUP's claim is a general claim to the monies allegedly fraudulently transferred from accounts in which it had an interest. Only the Bankruptcy Trustee has standing to bring a general claim for fraudulent conveyances of money. Defendant CIT GROUP, however, has a right of recovery from that action.

The court emphasizes that Plaintiff Whirlpool's action differs from Defendant CIT GROUP's claims in that this court found in prior orders that Plaintiff Whirlpool was the target of a fraudulent scheme and not just a creditor defrauded as a result of the illegal acts that caused harm to MidPac. October 24, 2002 Order, at 34–35. The allegedly new allegations raised by Defendant CIT GROUP, which involve insider transfers and the violation of certain agreements, do not establish the required showing of intent on the behalf of Defendants Bowling and Haller–Bowling to target Defendant CIT GROUP specifically. As a result, Defendant CIT GROUP remains unable to demonstrate the particularized standing necessary to bring a fraudulent transfer claim independent of the claim already filed by the

Bankruptcy Trustee and resolved in a settlement proceeding.

In its Reply, Defendant CIT GROUP had requested that this court refrain from issuing an order until after the Bankruptcy Court proceedings originally scheduled for February 21, 2003, had been resolved. On February 28, 2003, the Bankruptcy Court issued an oral ruling. The Bankruptcy Court was tasked with determining whether the settlement between the MidPac estate and Defendants Bowling and Haller–Bowling was reasonable. *See In re Sun Island Foods,* 125 B.R. 615 (Bankr.Haw. 1991) (finding that "[t]he Court should approve a compromise after considering all factors involved, only if it is in the best interests of the estate"); *In re Speir,* 190 B.R. 657 (Bankr.N.D.Ala.1995) (finding the proposed settlement unreasonable because it was not in the paramount interest of the creditors). In its oral decision, the Bankruptcy Court determined that the settlement proposed by the Bankruptcy Trustee was within the range of reasonableness. *See* Transcript of Proceedings Before the Honorable Robert J. Faris United States Bankruptcy Court Judge on February 28, 2003 ("February 28, 2003 Transcript"), at 7–8. It had mulled over the question of whether Defendant CIT GROUP was a secured creditor with a unique kind of avoidance claim peculiar to it. *See* Transcript or Proceedings Before the Honorable Robert J. Faris United States Bankruptcy Court Judge on February 21, 2003 ("February 21, 2003 Transcript"), at 7–8. Defendant CIT GROUP notes in its Supplemental Reply that the Bankruptcy Court had speculated specifically on the issue of whether Defendant CIT GROUP could bring a fraudulent transfer claim. In resolution of its query, the Bankruptcy Court stated that although it was "still reading cases on this point," it did not have to make a definitive ruling on Defendant CIT GROUP's remaining claims in order to approve the settlement. Febru-

ary 21, 2003 Transcript, at 7. Thus, in the end the Bankruptcy Court declined to decide which of Defendant CIT GROUP's claims still existed against Defendants Bowling and Haller–Bowling. The singular question before the Bankruptcy Court was whether the settlement was reasonable. *Id.* at 8. Also, in light of the fact that the remaining claims were between non-debtors, the Bankruptcy Court suggested it did not have jurisdiction to decide the dispute between Defendants CIT GROUP and the Bowlings. February 28, 2003 Transcript, at 8–9.

This court notes that Defendant CIT GROUP strongly opposed the settlement, arguing that Defendants Bowling and Haller–Bowling allegedly transferred $2 million in funds but were able to settle with the Bankruptcy estate for $20,000. *See* Reply, at 8, fn. 8. In light of the possibility that Defendant CIT GROUP is a secured creditor with an interest in the recovery made by the Bankruptcy Trustee from its fraudulent conveyance claim, the court recognizes its concern that its interests were not sufficiently represented by the Trustee. *See In re Speir,* 190 B.R. at 659 (stating that "[w]hile the Trustee's proposed compromise and settlement satisfies three of the four criteria courts consider in deciding whether to approve such settlements, this Court finds that the proposed compromise and settlement does not satisfy the fourth criterion because the settlement is not in the paramount interest of the creditors and would not benefit this estate").

Despite Defendant CIT GROUP's displeasure with the settlement, this court has been presented with no grounds upon which to conclude that the Bankruptcy Court approved the settlement because "the larger claim belongs to CIT." *See* Supplemental Reply, at 3–4. In reviewing the transcript excerpts provided by both

parties, this court does not agree with Defendant CIT GROUP that the Bankruptcy Court approved the settlement because it believed that Defendant CIT GROUP still had substantial independent claims before this court. To the contrary, the Bankruptcy Court stated specifically that it did not need to address the question of Defendant CIT GROUP's remaining claims. February 28, 2003 Transcript, at 9. It also noted that "CIT was trying to amend its claims [in this court] and had been rebuffed at least twice." *Id.* The Bankruptcy Court's ruling was limited to the reasonableness of the settlement, based on the arguments and facts presented to it. It made no binding ruling on the issue of Defendant CIT GROUP's standing to bring a fraudulent transfer claim in this court.

Defendants Bowling and Haller–Bowling reiterate in their Response to Defendant CIT GROUP's Reply memoranda that even if Defendant CIT GROUP had a perfected security interest in the City Bank account, it still does not have standing to bring a post-petition fraudulent transfer claim. *See* Response, at 3. They reaffirm their prior argument that because the Bankruptcy Trustee brought a fraudulent transfer claim on behalf of the unsecured creditors and an avoidance action to recover funds transferred allegedly illegally, Defendant CIT GROUP cannot assert either type of claim against them. Defendant CIT GROUP, they maintain, is bound under the doctrine of res judicata by the actions taken by the Bankruptcy Court and thus it must deal directly with the Trustee regarding its interests.

As discussed above, even if Defendant CIT GROUP is in fact a priority secured creditor, which this court recognizes is not undisputed, Defendant CIT GROUP's interests in the funds recovered in an adversary proceeding undertaken by the Bankruptcy Trustee are properly addressed by the Bankruptcy Court. Defendants Bowling and Haller–Bowling do not dispute that if Defendant CIT GROUP has a perfected security interest, it may be entitled to funds recovered by the Bankruptcy Trustee. For the purposes of the litigation before this court, however, this court's previous orders remain undisturbed: Defendant CIT GROUP does not have standing to bring a fraudulent transfer claim.

## CONCLUSION

For the reasons stated above, the court AFFIRMS the January 21, 2003 Order Granting in Part and Denying in Part CIT GROUP/BUSINESS CREDIT, INC.'s Motion for Leave to Amend its First Amended Cross Claim.

IT IS SO ORDERED.